### Arthur M. Barnhart v. William D. Boyce.

1. LANDLORD AND TENANT—*General Covenants to Repair, Binding Under All Circumstances.*—A general covenant to repair is binding upon the tenant under all circumstances, and if he desires to relieve himself from certain liabilities he must take care to except them from the operation of his covenants.

2. SAME—*Agreements to Keep Premises in Repair.*—When a tenant agrees to keep the premises in repair and to prevent their deterioration he must do so irrespective of the cause of such deterioration.

3. SAME—*Covenants to Make Improvements of a Definite Kind and Quality.*—When a lessee is required, by the terms of the lease, to make improvements of a definite kind and quality, and fails to do so, the lessor may make such improvements, and recover their cost from him.

Assumpsit.—Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge presiding. Heard in this court at the October term, 1901. Reversed and remanded. Opinion filed May 22, 1902.

Barnhart v. Boyce.

**Statement by the Court.**—Appellant, plaintiff below, and certain persons to whose title he has succeeded, as lessors, made a lease in writing of buildings known as Nos. 113, 115 and 117 Fifth avenue, Chicago, with engines, boilers, heating and lighting fixtures, etc., to appellee, defendant below, for the total rental of $68,000 from July 1, 1892, to April 30, 1898, which lease, omitting the formal commencement, conclusion and certain provisions not in question, is viz.:

"Second. That he has examined and knows the condition of said premises, and has received the same in good order and repair, and that no representations as to the condition or repair thereof have been made by the party of the first part, or the agent of said party, prior to, or at the execution of this lease, that are not herein expressed or endorsed hereon; and that he will keep said premises, and the additions thereto, in first class repair, replacing all parts and things thereunto belonging which may be broken or injured or destroyed, otherwise than by fire or the unusual acts of the elements, with articles and things of the same quality as those broken or injured or destroyed; and will keep said premises and appurtenances, including catch-basins, vaults and adjoining alleys, in a clean and healthy condition, according to the city ordinances and the direction of the proper public officers, during the term of this lease, at his own expense; and will, without injury to the roof, remove the snow and ice from the same when necessary, and clean the snow and ice from the sidewalks in front of said premises; and upon the termination of this lease, in any way, will yield up said premises to said party of the first part in as good condition and repair as when the same were entered upon by the party of the second part (loss by fire and ordinary wear excepted), and deliver the keys to said lessors or their agents. And as a further consideration for this lease, said second party covenants and agrees that he will, on or before January 1, 1898, at his own expense, put into said premises in the south side, in the front part, of the part of said premises known as 113 Fifth avenue, a new, first class, thoroughly equipped steam passenger elevator, with suitable elevator engine, the floor of the cage of which elevator shall have inside dimensions of not less than three feet by five feet; that said elevator and engine shall be made by the Crane Elevator Co., Eaton & Prince Co., or the Standard Elevator Co.; that if said

elevator and engine shall be made by the Standard Elevator Co., said second party agrees to procure from said last named company a good and sufficient bond, to be approved in writing by said Arthur M. Barnhart, to protect said first party from any and all losses, damages and expenses which they or any of them may sustain from any corporation or individual, for patent infringements, by reason of the introduction and use in said premises of said Standard Elevator Co.'s elevator and engine; but said second party shall have the right, if he desires, in lieu of any of the above elevators and engines, to put in, in the manner, within the time, of the size and kind, and in the place above described, a direct electric elevator and motor made by the Otis Elevator Co.; that in making openings for the shaft for said elevator, the cut shall be thoroughly 'headered' and supported, and any elevator machinery which may be placed on the roof of said premises shall be thoroughly housed and protected, and covered with sheet iron or galvanized iron; and he shall use due care to protect said premises; that all work to be done by him in and about said elevator and shaft shall be done in a thorough, workmanlike and first-class manner.

" Said second party further agrees that he will place in the present rear elevator shaft a new, first-class, thoroughly equipped freight elevator, having two lifting cables, which shall be placed inside the shaft, and a lifting capacity of not less than 3,000 pounds, made by C. H. Mitchell Co., Eaton & Prince Co., Crane Elevator Co., or any other first-class maker acceptable to said party of the first part. Both said elevators shall be constructed, maintained and operated by the party of the second part in strict conformity with the laws and ordinances of the city of Chicago. It is understood and agreed that both said elevators, their engines and appurtenances, shall immediately they are placed on said premises, become the property of and belong to the party of the first part. * * * And that the party of the second part will, at his own expense, make all repairs and renewals necessary or advisable to keep said premises, both inside and outside, and all additions thereto, from deteriorating in value or condition; and said first party shall be absolutely exempt from making any repair, renewal or addition to said premises and their appurtenances during the term of this lease; that he, said second party, will thoroughly paint all outside iron work about said premises at least once in two years; it being intended that the purview of this clause shall extend to all repairs and renewals of whatsoever sort, which a judicious owner

Barnhart v. Boyce.

of said premises would make for the benefit of the same, including repainting, repairs of roof, sewerage, steam apparatus, elevators, gas fixtures, plumbing and every other sort of repairs or renewals not herein specifically set down.

"Fourth:  *  *  .*  All alterations and additions to said premises shall remain for the benefit of the lessors, and if said first party shall so elect, said second party shall, within thirty days after the termination of this lease, in any way, restore said premises to the same condition in which they were before said alterations were made, and it is expressly understood that any alterations or additions which may be made by the second party to, or upon said premises, shall be made without injury to said premises, and in a thorough and workmanlike manner.  *  *  *

"It is understood and agreed that no heavy machinery shall be placed upon or used on the fourth or fifth floors of said premises, and that the aggregate weight on each of said floors shall at no time exceed twenty-five tons, and that not more than fifty tons shall be placed on either the second or third floors of said premises, and that weight imposed on all floors in said premises shall be properly distributed over said floors, in order that said premises may not be injured from overloading, or an unequal distribution of weights, it being understood that the three numbers, 113, 115 and 117 Fifth avenue, shall, for the purposes of description in this lease, be considered as one building.  *  *  *

"Fifth.   To pay (in addition to the rents above specified) all water rents and electric and gas bills, taxed, levied, assessed or charged on said demised premises for and during the time for which this lease is granted.   In case said water rates, electric and gas bills shall not be paid when due, or said repairs hereinbefore agreed to be made by said second party shall not be made within ten days after notice in writing to said second party, said party of the first part shall have the right to pay said water rates, electric and gas bills, and to make said repairs, and the reasonable amounts paid therefor, together with any sums paid by said party of the first part to keep said premises and their appurtenances in a clean and healthy condition, as hereinbefore specified, are hereby declared to be so much additional rent, and shall be due and payable with the next installment of rent due thereafter under this lease."

After said lease had expired, appellant, claiming that appellee had violated the several agreements therein contained and above specifically set out, brought his action

for damages by reason thereof. The declaration consists of six special counts, charging violations by defendant of different agreements contained in the several paragraphs of the lease as above set out, and the common counts, to which was pleaded the general issue. A trial before the court and jury resulted in a verdict for defendant and judgment thereon, from which the plaintiff has taken this appeal.

The court gave nine instructions for the plaintiff, but refused one, viz.:

" 6. You are instructed as a matter of law that if the defendant Boyce failed to keep the said premises or the additions thereto in first-class repair, or failed to replace all parts and things thereunto belonging or that may have become broken, injured or destroyed during his possession of the premises, otherwise than by fire or the unusual actions of the elements, or if the said defendant Boyce has failed to make repairs and renewals to said premises while in his possession necessary or advisable to keep the same, both inside and outside, with all additions thereto, from deteriorating in value or condition, or to do such things in that behalf as a judicious owner of the premises would do for the benefit of the same, and by reason of his neglect or failure in that regard the plaintiff has been obliged to, and has expended divers sums of money for labor and material in that behalf, then you must allow by your verdict to the plaintiff the amount or amounts thus expended by him."

Among other instructions given for defendant were the following :

" 2. The jury are further instructed that in determining what is ordinary wear referred to in the lease introduced in evidence herein, you must look to the surrounding circumstances in connection with the making of said lease, the use for which the premises were leased, the fact that said lease permitted said premises, or portion thereof, to be sublet, the age of the building, and all the circumstances connected therewith and known to the parties.

" 3. The jury are instructed that the lease introduced in evidence and on which the recovery, if any, must be had, provides that defendant Boyce should make certain alterations in the premises described in said lease, and should return said premises to the plaintiff herein in as good con-

Barnhart v. Boyce.

dition as they were when received by defendant Boyce, with said alterations added, ordinary wear excepted. If you find from the evidence that defendant Boyce did not so return said premises, the measure of damages for failure to so return them is the reasonable cost of putting said premises in as good condition as they were received by defendant Boyce with said additions, less the ordinary wear, and that the measure of damages is not what it would cost to put them in as good condition as they were when received by defendant Boyce."

FLOWER, VROMAN & MUSGRAVE, attorneys for appellant.

ROY O. WEST, attorney for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

The principal contention of appellant's counsel is, that the verdict and judgment is against the clear weight of the evidence, is contrary to undisputed evidence in the case, and in direct violation of the court's instructions.

The evidence is voluminous, and in view of the conclusions reached need not be stated except in a general way. It shows, among others, the following facts: Appellee occupied the demised premises during the full term of the lease, and gave possession thereof to appellant on May 2, 1898. On the same day, acting under a provision in the fourth clause of the lease quoted in the statement, appellant gave written notice to appellee that the leased premises were in exceedingly bad condition; that they were seriously damaged by appellee's failure to keep them in proper repair and by many alterations and additions made by appellee, and that the latter would be expected, under the covenants of the lease, to either restore the premises to the condition in which they were when he took possession thereof, or to pay the cost and expenses thereof. The notice also invited a conference, so that an agreement of a fair basis of adjustment might be reached. Appellee gave no heed to the notice, and after the lapse of thirty days, as provided by said clause of the lease, appellant gave appel-

lee, on June 2, 1898, a further notice that he, appellant, would proceed to make the necessary repairs upon the leased premises and to make restorations and removals therein at the expense of appellee. Appellant thereupon made repairs and incurred expenses in restoring said premises to the condition in which he claims appellee received them, and in removing certain additions to and alterations made therein by appellee during his tenancy; all of which appellant claims he had a right to do at appellee's expense under the different provisions of the lease quoted in the statement. His expenditures in that regard, shown by the evidence, many of which, it is admitted by appellee, were made, and the amounts paid therefor reasonable and fair, amount, in the aggregate, to about $4,000. There is practically no dispute, and in any event it is clearly established by the great weight of the evidence, that, among other things, by way of alterations in and additions to said premises, appellee, during his tenancy, changed the sewer system and plumbing in the building, put in an electric passenger elevator, which was worn out before the expiration of the lease, and he replaced it by a cheap freight elevator; that he put in partitions in different parts of the building, took up parts of a cement floor in the basement and made excavations therein for machinery, all of which alterations and additions, as made, were left by appellee at the end of his term, without any attempt on his part to restore the premises to the same condition they were in when he received them, ordinary wear excepted. Appellant's expenditures were largely made because of said alterations and additions made by appellees, either by way of repairs or in restoring the premises to the condition in which they were received by appellee.

By the second clause of the lease appellee agreed to put in the building " a new, first-class, thoroughly equipped steam passenger elevator, with suitable elevator engine," or if he desired, in lieu thereof, to put in " a direct electric elevator and motor, made by the Otis Elevator Company," of the same size and kind as the said steam elevator; also

to place in the present rear elevator shaft a new, first-class, thoroughly equipped freight elevator, and that both said elevators, their engines and appurtenances, as soon as placed in the premises, should become the property of and belong to appellant.

By the third clause of the lease appellee further agreed that he would, "at his own expense, make all repairs and renewals necessary or advisable to keep said premises, both inside and outside, and all additions thereto, from deteriorating in value or conditions." That there might be no possibility, as it would seem, of any misunderstanding as to the scope of this provision of the lease, it closes with the following language, viz.:

"It being intended that the purview of this clause shall extend to all repairs and renewals of whatsoever sort, which a judicious owner of said premises would make for the benefit of the same, including repainting, repairs of roof, sewerage, steam apparatus, elevators, gas fixtures, plumbing, and every other sort of repairs or renewals not herein specifically set down."

In the fourth clause of the lease is also this provision, viz.:

"All alterations and additions to said premises shall remain for the benefit of the lessors, and if said first party shall so elect, said second party shall, within thirty days after the termination of this lease in any way, restore said premises to the same condition in which they were before said alterations were made, and it is expressly understood that any alterations or additions which may be made by the second party to or upon said premises shall be made without injury to said premises, and in a thorough and workmanlike manner."

From all these provisions and the above recited evidence, it would seem clear it was the duty of appellee to have left in the premises, at the expiration of his term, a first-class passenger elevator, either steam or electric, and a first-class, thoroughly equipped freight elevator, both in a fair state of repair, such repair as would keep them from deteriorating in value or condition, at least in such a state of repair as a judicious owner of said premises would have made for the benefit thereof. We think the fact that the passenger ele-

vator was worn out before the end of the term did not
excuse or relieve him from this duty, but it should have
been left to the jury, under proper instruction, to deter-
mine what damage, if any, appellant suffered by reason of
the breach of the agreement in this respect. The same is
true in principle as to the freight elevator. The evi-
dence tends strongly to show that appellant's damage was
the cost of a new passenger and a new freight elevator, less
some slight deductions for the cheap freight elevator and
other small items.

By the fourth clause of said lease it is, in substance, pro-
vided that, if appellant should so elect, appellee should be
required, within thirty days after the termination of the
lease in any way, to restore said premises to the same con-
dition in which they were before alterations were made
therein by appellee. As has been stated, appellant elected
to have appellee restore said premises to the conditions in
which they were when he took possession thereof, or to pay
the cost and expense thereof. Appellant gave to appellee
written notice of this election, but he did not heed it.
After the lapse of thirty days appellant proceeded to and
did change the said sewer system and plumbing accord-
ingly, and remove the partitions. The evidence shows,
practically, without dispute, what was the fair and reason-
able cost thereof, and appellant is entitled to recover there-
for.

The evidence also tends to show, and there is no serious
contradiction in that regard, that appellant, after the lapse
of said thirty days, made divers other repairs on said prem-
ises which should have been made by appellee during the
term of his lease, and as required by his agreements therein
that are above quoted, and which he failed to make. We
are at a loss to conceive why the jury did not make allow-
ance to appellant for the fair and reasonable cost of such
repairs, which is shown by the evidence, and in many
instances admitted by appellee's counsel to have been fair
and reasonable.

For appellee it is claimed that, as to these general repairs,

Barnhart v. Boyce.

he is not liable, because, he says, he surrendered the leased premises in as good repair and condition as when received by him, ordinary wear excepted. He relies upon that part of the second clause of the lease quoted in the statement, which is, in substance, that upon the termination of the lease he will yield up the premises to appellant in as good condition and repair as when the same were entered upon by appellee, loss by fire and ordinary wear excepted. He is not sustained in this contention by the record. By the second provision of the lease he says, viz.:

" That he has examined and knows the condition of said premises, and has received the same in good order and repair, and that no representations as to the condition or repair thereof have been made by the party of the first part, or the agent of said party, prior to, or at the execution of this lease, that are not herein expressed or indorsed hereon."

No other representations as to the then condition or repair of the premises are contained in or indorsed on the lease, and none are shown, except that the building was old at the time appellee took possession, and that in order to carry on his publishing business it was necessary for him to make, and he did make, certain changes and improvements, which there is evidence to show were left at the end of the term in as good condition as when made by appellee, ordinary wear excepted. As to these improvements and changes, we discover no evidence on the part of appellant that they needed repairs, except the elevator, which was worn out. As to it we have given our views above. As provided by the lease, all additions and alterations were to remain for the benefit of appellant, and were his property, except in case of his election to have the premises restored as before the additions and alterations. They were a source of no credit to appellee, except in so far as their presence tended to show that the premises were left in good repair and condition. In passing, it might be said, there was no error in allowing appellee to show what these improvements were. The jury, however, should be instructed, if appellant deemed it desirable, to consider this evidence only with ref-

erence to its bearing upon the state of repair of the premises. In so far as appellant elected to restore the premises and remove these alterations and additions, and did so, appellee, by the terms of the lease, was liable for the fair and reasonable cost thereof.

All the terms and provisions of the lease must be construed together, and each given effect according to the intention of the parties thereto, so far as possible. We think the special provision in the third clause of the lease, above quoted, overcomes, or at least qualifies, the general provisions in the second clause relating to ordinary wear, to the extent that it was appellee's duty, under the lease, to make such general repairs during the term of the lease as would prevent the premises from deteriorating in value and condition, and such as a judicious owner would have made for the benefit of the premises.

No case cited by appellee's counsel, when considered with reference to the provisions of the lease here in question, in our opinion, conflicts with the views above stated, which are supported by Taylor on Land. & Ten., Sec. 358; Kling v. Dress, 5 Robt. (N. Y.) 521–25; Polack v. Pioche, 35 Calif. 416–22; Waddell v. DeJet, 76 Miss. 104–9; Scott v. Haverstraw, etc., Co., 135 N. Y. 141.

In the Polack case, *supra*, the court say:

"A general covenant to repair is binding upon the tenant under all circumstances. * * * If the tenant desires to relieve himself from liability for injuries * * * he must take care to except them from the operation of his covenant."

In the Scott case, *supra*, which was an action by a landlord to recover damages for the breach on the part of a tenant of certain covenants in a lease to make certain additions and improvements, to keep up and maintain the same, and at expiration of lease to leave the same upon the demised premises, to preserve the property from deterioration, and to put upon the premises a certain steam engine, it was held that the tenant was bound by these covenants.

On behalf of appellant the learned trial court, as we think, quite fully and accurately instructed the jury, but it

either disregarded these instructions, or was misled by instructions 2 and 3, for appellee, which are quoted in the statement.    These latter instructions were calculated to mislead the jury, if they were not erroneous, in giving undue prominence to the provisions in the lease as to repairs, excepting ordinary wear, to the exclusion of the many other special provisions of the lease which bear on appellee's duty as to repairs, and are quoted above.    They also, to some extent, conflict with instructions 4, 5, 7, 8 and 9, given for appellant, which relate to appellee's duty as to repairs under the above quoted provisions of the lease.

Instruction 6, asked by appellant, was, in our opinion, properly refused, because it in effect tells the jury they might allow, for repairs and renewals which, under the lease, should have been made by appellee, the amounts expended by appellant therefor, without reference to whether such amounts were fair and reasonable or otherwise.

Because the verdict is clearly and manifestly against the evidence, and by reason of said two misleading instructions, the judgment is reversed and the cause remanded.