ROBERT B. CARTER, APPELLEE, V. A. I. ROOT, INCORPORATED,
APPELLANT.

FILED JUNE 11, 1909.   No. 15,272.

1. Contract: WAIVER.  A builder's contract provided for the construc-
tion of a building under the direction of an architect as the
agent of the owner, and further provided that no alterations
should be made in the work as described by the plans and speci-
fications except upon the written order of the architect, and that
extra work would be paid for only when the price had been
agreed upon and affixed to the order given by the architect in
writing and countersigned by the owner previous to the per-
formance of the same. *Held*, That the architect alone could not
by verbal agreement waive this provision of the contract.

2. ———: ———.  A clause in a builder's contract providing for a
written demand by the builder for additional time to complete
the building is legal, but may be waived by the owner entering
into supplemental contracts for extras which require additional
time for the completion of the building.

3. ———: TIME OF PERFORMANCE.  Unless otherwise provided in the
contract, a builder is not entitled to additional time because he
has been delayed in the construction of a building by ordinary
rains, for such might reasonably have been contemplated at the
time the contract was made; nor is he entitled to additional
time for delays caused by accidents or unexpected conditions
against which he could have provided in his contract.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE. *Reversed with directions.*

*Lysle I. Abbott,* for appellant.

*Thomas F. Lee, Nelson C. Pratt* and *I. J. Dunn, contra.*

EPPERSON, C.

July 14, 1904, the plaintiff, a contractor and builder,
and the defendant, A. I. Root, Incorporated, entered into
a written contract whereby the plaintiff for a stipulated
compensation agreed to construct a certain building for
the defendant.  Said agreement contained the following

provision: "No alterations shall be made in the work shown or described by the drawings and specifications except upon a written order of the architect, and when so made the value of the work added or omitted shall be computed by the architect and the amount so ascertained shall be added to or deducted from the contract price." The contract provided that the building was to be completed on or before October 15, 1904, and that the contractor should pay to the owner $10 for each day thereafter that the work remained in an incomplete condition as liquidated damages sustained by the owner; the same to be deducted from the contract price. But it was further provided: "Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner, or the architect, or of any other contractor employed by the owner upon the work, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within 24 hours of the occurrence of such delay. The duration of such extension shall be certified to by the architect, but appeal from his decision may be made to arbitration, as provided in article 3 of this contract." The construction of the building by the plaintiff was to be under the direction and to the satisfaction of the architect, who by the express provisions of the contract was made the agent of said owner. The specifications, which were referred to in the contract and which are necessarily a part thereof, contained the following provision: "At any time the architect directed by the owner may require alterations, additions or omissions from the contract and the same shall not affect the validity of the contract, but the price of such work shall be added to or deducted from the contract price as the case may be. * * * But extra work will be paid for only when the price has been agreed upon and affixed to

the order given by the architect in writing and countersigned by the owner previous to the performance of the same. Such order for work must be produced and surrendered at the final settlement or no payment for such work will be made." Provisions were made for the arbitration of whatever disputes might arise as to compensation for extras. After the completion of said building, and within the time authorized by law, the plaintiff filed his lien against the defendant's property, claiming that there was due upon the original contract the sum of $4,712, and that there was due to him for extras $4,026.22, and that he had been damaged by the defendant in the sum of $1,500 for delays in the construction of said building caused by the defendant. The claim for damages was subsequently abandoned, and no further reference will be made thereto in this opinion.

This action was instituted to foreclose the plaintiff's lien. Defendant admitted the written contract, and also admitted liability for some of the extras pleaded by plaintiff, and denied others. He pleaded a counterclaim, which included an item of $1,500 damages for plaintiff's delay in the construction of the building. The lower court rejected defendant's claim for damages, and found that the plaintiff was entitled to credit for the original contract price, $18,321, and for extras, $1,772.02, and that he was chargeable with the following: Cash paid during the construction of building, $14,385.15; for small items of defendant's counterclaim, $174.10; for amount paid by defendant to subcontractors upon liens by them filed, $6,823.01. The difference being in favor of the defendant, the trial court gave him judgment therefor, which, with allowances for interest, amounted to $681.61. The defendant, contending that he is entitled to a larger judgment, has appealed to this court.

Two questions are presented for determination: First, is the plaintiff entitled to recover for the disputed extras claimed? Second, is the defendant entitled to recover damages for the delay in completing the building? Of

the extras allowed to the plaintiff by the trial court, the defendant admits $771.39. Liability for other extras are admitted, but the amounts disputed. Such items aggregate $392.33 as allowed by the trial court. The evidence as to the value of these extras is conflicting. A discussion of it is unnecessary. We adopt the findings of the trial court and give credit therefor to the plaintiff. This leaves in controversy $608.30 allowed by the lower court.

It is contended that these items were not extras, but were embraced in the written contract. This evidence also is conflicting, and it is impossible for one who is not an architect or a builder to take the contract, the plans and the specifications, and from them alone to determine whether or not certain material furnished and certain work performed are contemplated and provided for by the contract, or are supplemental to or additions to the plan of the building previously arranged. It is apparent that on account of so many details it is very difficult after the work is completed to adjust the matters here in dispute. That the plaintiff did work in addition to what would have been required had the contract been strictly complied with is apparent; but it is the defendant's contention with reference to many of the items in controversy that the additional work was made necessary because the plaintiff had first proceeded contrary to the contract, which necessitated the doing of the work over again in order to conform thereto. The defendant argues that he is not required to pay the same because no written order was given therefor as provided in the contract. The architect was the defendant's agent and as such superintended the construction of the building, and it is claimed that he, acting for the defendant, ordered and directed certain alterations and changes to be made; that his directions were given orally and complied with by the plaintiff, and that the defendant, thus acting through his authorized agent, waived the provision of the contract requiring such alterations to be made in writing. There can be no doubt but that such a provision in a builder's

contract is valid and that it will be enforced unless it is waived by the parties, nor is there any doubt but that the owner can waive such provisions by verbally entering into an agreement with the contractor for extras which would estop him from alleging the strict terms of the written contract for the purpose of defeating recovery for extra work performed or material furnished by the builder. *Erskine v. Johnson,* 23 Neb. 261. But did the verbal order of the architect in the case at bar amount to a waiver by the defendant of this provision of the written contract? A party to any contract may waive the provisions made for his benefit, but it is a rule requiring the citation of no authority for its support that an agent is bound by the terms of his agency. While the architect was the agent of the defendant, he was made so by the contract in controversy, and that contract expressly provided the manner in which the architect was authorized to make any changes in the construction of the building. Its terms must be construed as absolutely prohibiting the architect from binding his principal, the defendant, to pay for extras ordered unless the same was in writing, signed not only by the architect, but by the defendant himself. This provision of the contract was made for the benefit of both of the parties. The plaintiff could have refused to make any additions to the building as originally contemplated unless an order for the change was given as the contract provided; and, on the other hand, the defendant was entitled to know what alterations and what changes were being made. The necessity of such a contract is apparent from the mere fact of this contention. Had the clause in question been complied with, this question could not have arisen.

In *Gray v. La Société Française De Bienfaisance Mutuelle,* 63 Pac. 848 (131 Cal. 566), it was held: "Specifications for a building contract provided that no extra work should be allowed except on a written order from the architect, approved by the building committee, and that, on any alterations or changes, the character and valua-

tion of the extra work should be agreed on in a writing signed by the owner or architect and the contractor. The contractor, on verbal instructions from the architect, and without the knowledge of defendants or their building committee, continued the foundation wall 18 inches higher than specified. *Held,* That defendants were not liable therefor as extra work."

In *Langley v. Rouss,* 77 N. E. 1168 (185 N. Y. 201), it was held: "A contract for the erection, alteration, and extension of certain buildings made the architect the agent of the owner, and stipulated that no alteration should be made in the work described by the specifications, except on the written order of the architect, and that no extra work would be allowed unless an itemized estimate was submitted by the contractor, and the architect's order in writing was given for the same. *Held,* That the architect could not enlarge his powers by waiving the requirement that the contractor should furnish estimates of extra work and obtain a written order from the architect therefor." The contract construed in the last case cited is almost identical with the contract here in controversy with reference to the agency of the architect, and also with reference to the alterations which might be made. In the opinion it is said: "The architect was expressly made the agent of the owner for the purposes of the contract, but such agency, so far as it related to making alterations, or directing that extra work should be done, was limited, as in the contract stated, to such orders as he should give in writing. The restrictions on the authority of the architect were for the protection of the owner. Where contracts, including plans and specifications, involve a great amount of detail, and the merits of claims for alterations and extra work are difficult to determine and adjust after the work is completed, a provision requiring the contractor to submit itemized estimates of the expense of proposed alterations or extra work, and that the order of the architect therefor should be in writing, is reasonable and tends to a more definite

understanding and avoids controversies. The contractor is not required to make changes or perform extra work unless he first receives written authority therefor, and the contract is therefore neither unreasonable nor severe, and it should be enforced. An agent cannot enlarge his own powers by waiving the limitations thereon." 185 N. Y. 201.

In *Sheyer v. Pinkerton Construction Co.,* 59 Atl. (N. J.) 462, it was held: "Under a building contract providing that no alteration shall be made except on the written order of the engineer, a recovery cannot be had for the expense of alterations unless an order is produced, or it is shown that the stipulation was waived, or the contractor fraudulently lured into making the alteration. without an order."

In *Woodruff v. Rochester & P. R. Co.,* 108 N. Y. 39, in reference to a claim for extras under a contract for the construction of a railroad, the contract providing that no extras were to be paid for unless made upon a written order, the court said: "This was one of the terms of the contract and we are unable to perceive that the engineers had any power or authority to alter or change it. It was inserted in the contract to protect the defendant from claims for extra work which might be based upon oral evidence, after the work was completed, and when it might be difficult to prove the facts in relation thereto. If the engineers in charge had an unlimited authority to change the contract at their will, and to make special agreements for work fairly embraced therein, then the defendant had very little protection from the reduction of their contract to writing. If these engineers were the agents of the defendant, they were its agents with special powers, simply to do the engineering work and to superintend and direct as to the execution of the contract; but they had no power to alter or vary the terms of the contract or to create obligations binding upon the defendant not embraced in the contract." The above was quoted with approval in *Baltimore & O. R. Co. v.*

*Jolly Bros.,* 71 Ohio St. 92, citing: *Campbell v. Cincinnati S. R.,* 9 Ky. Law Rep. 799, 6 S. W. 337; *Sanitary District of Chicago v. McMahon & Montgomery Co.,* 110 Ill. App. 510.

In *McLeod v. Genius,* 31 Neb. 1, it was held that the owner was liable for work and material furnished by the contractor not called for by the original written contract, where the owner or his authorized agent by subsequent oral agreement promised to pay therefor, or knew that the contractor would charge for the same as extras and assented thereto or permitted the same without objection. In the opinion it is said: "But he (the contractor) cannot recover as for extras for changes and additions without making known to the owner or agent that he would expect pay." We think that that case is distinguishable from the case at bar. In that case the owner's son was the superintendent of construction and had general authority, as we take it, to bind his principal by verbal contract for extras. While in the case at bar the architect's authority as agent was limited, he having no authority whatever to bind his principal by a verbal agreement. The architect was the representative of the defendant only to the extent of seeing that the building was constructed according to the contract and the plans and specifications with whatever changes were made by the owner, either by his own additional agreement or in the manner and form permitted by the contract itself.

In *Erskine v. Johnson,* 23 Neb. 261, it is said: "The architect will be so far the agent of the owner as to bind him for alterations made necessary by the mistake of such architect, in order to complete the building according to contract, as where the plans and specifications called for windows which are too large, or too small, whereby the loss is occasioned to the contractor; therefore as between the contractor and the owner in such case the owner would be liable." That rule is inapplicable to this case for the reason that the alterations alleged by the plaintiff were not occasioned by any mistake in the

plans and specifications, the question of fact being whether or not the alleged alterations were required by the plans and specifications or required by subsequent verbal agreement which is binding upon the defendant.

The evidence shows that the defendant did not know that plaintiff expected compensation for the disputed extras, nor that plaintiff claimed that the same were extras until after the completion of the building, nor did the defendant consider that they were extras. On the other hand, it was his understanding that they were included in and made a part of the building as originally planned. We think, however, that there is one exception, an item of $80 for constructing a railing in the office-room. It is apparent that this was a change from the plans and specifications. It is apparent also that the defendant knew of this change and permitted the same to be made. This item must be allowed to the plaintiff. But all the other disputed items fall within the general rule, and as to them the defendant entered into no contract to pay extra therefor, nor did he have any reason whatever to believe that the plaintiff considered that they were extras, and as to these items, aggregating $535.12, the written contract must control.

We come now to the second question presented: Is the defendant herein entitled to recover damages for the delay in the completion of said building? There was a delay of 150 days. The contract itself provided for some contingencies which might operate to delay the completion of the building, such as the act, neglect, or default of the owner, or the architect, or of any other contractor, or delays occasioned by fire, lightning, earthquake, or cyclone or abandonment of work by employees. It was stipulated that the time given for the completion of the building might be extended for a period equal to the time lost by reason of any or all of the causes above mentioned, but that no such allowance of time should be made unless a claim therefor in writing was presented by the plaintiff to the architect. Such contracts

are legal and enforceable.   Courts have generally held
that provisions requiring written notices for addi-
tional time must be complied with.   *Chapman Deco-
rative Co. v. Security Mutual Life Ins. Co.*, 149 Fed. 189;
*Curry v. Olmstead*, 26 R. I. 462; *Dermott v. Jones*, 23
How. (U. S.) 220; *Feeney v. Bardsley*, 66 N. J. Law, 239;
*Davis v. La Crosse Hospital Ass'n*, 121 Wis. 579; *Con-
saul v. Sheldon*, 35 Neb. 247.   Plaintiff herein failed to
give notice that additional time was required.   The rea-
son that a notice in writing is required is because the
contract provides therefor, and, if a delay was caused
by any reason not mentioned in the contract, the plain-
tiff has lost none of his rights by failing to make a
written demand for additional time.   Undoubtedly,
under the provision of the contract, if delay had been
caused by the act, neglect or default of the owner, or on
account of any of the other reasons named in the clause,
the plaintiff would be entitled to necessary additional
time for the completion of the building upon his written
demand therefor.   In the absence of a written demand
for additional time or waiver thereof, the plaintiff cannot
be relieved from damages if such delay was caused by
any of the agencies, the existence of which entitled him
to additional time upon his written notice.   In so far
as the completion of the building was delayed beyond
the stipulated time by agencies not named in the con-
tract, the rights of the parties are to be determined as
they would exist had no provision whatever been made
for the giving of the written demand.

The plaintiff testified that there was a delay of 60 days
by reason of the extras; 14 days in cleaning the lot before
he could begin the work; 30 days because the iron first
prepared was condemned; 10 days by rain, and 14 days
because of water rising in the excavation.   His evidence
in this respect was undisputed.   The delay occasioned
by the contracts for extras should not be charged to the
plaintiff.   We doubt that the contracts for the extras
made verbally between the parties were "acts" of the

owner within the meaning of that clause in the contract providing for written notice for additional time. However, it is unnecessary to decide this point. As shown above, the defendant admitted that he is liable to compensate plaintiff for installing certain extras. He did not order the extras in writing, as the contract provided he should. The time fixed for the completion of the building was three months. It would seem that the parties did not contemplate that this time would be sufficient for the installing of any extras that might thereafter be desired. These contracts were additional to the written contract, and when made we take it that the defendant knew that additional time would be required to make alterations. Under these circumstances the defendant should be held to have waived a written demand for the necessary additional time required to install the extras. In the construction of similar contracts many courts have held that the contractor should not be held responsive in damages for delays caused by similar arrangements for extras. In *Sweeney v. Davidson*, 68 Ia. 386, we find the following: "The defendants set up a counterclaim for damages for failure to complete the house within the time agreed. It is admitted that the house was completed 14 days later than the time fixed in the contract; but the defendants ordered extra work, and we are not prepared to say that the few additional days taken to complete the house was more than the time required to do the extra work." A similar case, also, is *Focht v. Rosenbaum*, 176 Pa. St. 14, wherein the following appears: "A building contract provided that 'no order for any change, * * * which affects the time of completion, shall be valid, unless given in writing'; and that the contractor should forfeit the sum of $10 for each day the work should remain unfinished after the time agreed upon for its completion 'unless such delay could not with reasonable diligence and prudence have been avoided or forseen' by the contractor. The owner gave a parol order to change a girder in the building,

which was complied with. The contractor claimed that the change caused a delay in the completion of the building. *Held*, (1) That the right of the owner to compensation for the delay was not dependent upon the form of the order for the change which caused it, but upon the answer to, the question whether the delay was in any way attributable to a want of diligence or foresight of the contractor, and this question was for the jury; (2) that the owner could not take advantage of his own fault or neglect in not reducing to writing the order to change the girder." See 6 Cyc. 72, 73.

Some claim is made by the plaintiff for credit for delay for time expended in cleaning the lot, also for delay caused by water rising in the excavation and by rainfall. None of these items are within the issues made by the pleadings and therefore cannot be considered.

The plaintiff is not entitled to delay because a certain lot of iron first prepared was condemned. This iron was rejected because it did not come up to the standard required in the specifications. It appears that the fault was either with the plaintiff or with the parties from whom he purchased the iron. At most, under the testimony of the plaintiff himself, he is entitled to 60 days' delay, and is liable in damages for a delay of ninety days. The evidence here shows that the rental value of the building was equal to the amount stipulated in the contract as liquidated damages. This amount will therefore no more than compensate the defendant for the damages sustained. *Lee v. Carroll Normal School Co.*, 1 Neb. (Unof.) 681.

We find that when the building was completed the plaintiff was entitled to credit for the contract price, $18,321, and for extras, $1,243.72, and he was chargeable with cash paid upon the contract, $14,385.15, with items allowed by the trial court upon defendant's counterclaim, $174.10, and with damages occasioned by delay, $900, leaving a balance due to him at that time, $4,105.40. This, with interest to October 1, amounts to $4,556.50.

However, the defendant had been required to pay subcontractors money due to them from the plaintiff, which, with interest, the court found amounted on the first day of October, 1906, to $6,823.01. According to this computation the balance was in favor of the defendant and amounted to $2,266.51 on the first day of October, 1906, and for this amount the defendant should have had judgment.

We therefore recommend that the judgment of the district court be reversed and that this cause be remanded, with instructions to the lower court to enter a judgment in favor of the defendant and against the plaintiff for the sum of $2,266.51, as of date October 1, 1906.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the lower court is reversed and this cause is remanded, with instructions to the lower court to enter a judgment in favor of the defendant and against the plaintiff for the sum of $2,266.51, as of date October 1, 1906.

REVERSED.