EDWARD E. GUSTIN & COMPANY, APPELLEE, V. NEBRASKA BUILDING & INVESTMENT COMPANY ET AL., APPELLANTS: F. B. BAYLOR, TRUSTEE, INTERVENER.

FILED APRIL 21, 1923.   No. 22268.

1. **Damages:** CONTRACT: CONSTRUCTION: LIQUIDATED DAMAGES. Whether the sum mentioned as damages in a building contract and indemnity bond is a penalty or liquidated damages may be a question of construction. In determining this question, the subject-matter of the contract, the consideration, the intention of the parties, all the evidence, facts and surrounding circumstances, and the language and context of the contract, must be carefully considered. And where the damages are uncertain, and not readily capable of exact ascertainment by any known rule, and the parties surveyed the whole situation at the time of contract, and agreed upon the amount of damages, in case of a breach in the contract to construct a building by a certain time, such sum, in case of a breach, is the true measure of recovery and is liquidated damages and not a penalty.

2. **Evidence** examined, and *held* that this action was not prematurely brought.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*Johnson, Moorhead & Rine, Good & Good* and *A. W. Lane,* for appellants.

*Stewart, Perry & Stewart,* for appellee.

*Johnson, Moorhead & Rine* and *F. B. Baylor,* for Baylor, Trustee.

Heard before MORRISSEY, C. J., GOOD and ALDRICH, JJ., BEGLEY and BUTTON, District Judges.

BUTTON, District Judge.

On the 20th day of February, 1919, Edward E. Gustin & Company, appellee, entered into a 99-year lease with the Nebraska Building & Investment Company, one of the appellants, to a parcel of ground, belonging to appellee, and situated between the Lincoln Hotel and the Lincoln Drug Company on P street, Lincoln, Nebraska, one of the business sections of the city. There were buildings situated on these premises at the time, of the value of $15,000; but they were in a bad state of repair, and to render them fit for rental purposes required an outlay of considerable money. By the terms of the lease these buildings were to be razed to the ground and removed. And, also, by the terms of the lease, appellant was to erect a new fire-proof edifice, at least four stories high, and complete the same by January 1, 1921. The covenant to erect this new building was the inducement that caused appellee to enter into the lease. Appellant agreed to pay $250 a month during the life of the lease as rental, and to pay taxes, keep up repairs, ordinary and extraordinary, and to pay all assessments, and keep up insurance, etc. The lease further provided that, if appellant failed to erect the building as agreed, appellee's actual damages should be $15,000. To procure the faithful performance of this lease an indemnity bond in the sum of $15,000 was given, with the Nebraska Building & Investment Company as principal and certain other of the appellants as sureties.

Appellant began the actual erection of a building, excavating, building footings and concrete walls and other foundation work, and then defaulted and ceased work entirely. After January 1, 1921, the Nebraska Building & Investment Company went into the hands of a receiver. One William E. Barkley was appointed receiver, and later the leasehold interest in the premises was sold to one Eugene C. Eppley, who is now in possession. In all other respects there has been no default in

defense of fraud in the inception of the note as alleged, the verdict should be for the defendant, unless plaintiff satisfied them by a preponderance of the evidence that it acquired said note as a *bona fide* holder in due course.

We find no error in the record, and the judgment of the district court is therefore

AFFIRMED.

---

EDWARD E. GUSTIN & COMPANY, APPELLEE, V. NEBRASKA BUILDING & INVESTMENT COMPANY ET AL., APPELLANTS: F. B. BAY'OR, TRUSTEE, INTERVENER.

FILED APRIL 21, 1923. No. 22268.

1. **Damages**: CONTRACT: CONSTRUCTION: LIQUIDATED DAMAGES. Whether the sum mentioned as damages in a building contract and indemnity bond is a penalty or liquidated damages may be a question of construction. In determining this question, the subject-matter of the contract, the consideration, the intention of the parties, all the evidence, facts and surrounding circumstances, and the language and context of the contract, must be carefully considered. And where the damages are uncertain, and not readily capable of exact ascertainment by any known rule, and the parties surveyed the whole situation at the time of contract, and agreed upon the amount of damages, in case of a breach in the contract to construct a building by a certain time, such sum, in case of a breach, is the true measure of recovery and is liquidated damages and not a penalty.

2. **Evidence** examined, and *held* that this action was not prematurely brought.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*Johnson, Moorhead & Rine, Good & Good* and *A. W. Lane,* for appellants.

*Stewart, Perry & Stewart,* for appellee.

*Johnson, Moorhead & Rine* and *F. B. Baylor,* for Baylor, Trustee.

Heard before MORRISSEY, C. J., GOOD and ALDRICH, JJ., BEGLEY and BUTTON, District Judges.

BUTTON, District Judge.

On the 20th day of February, 1919, Edward E. Gustin & Company, appellee, entered into a 99-year lease with the Nebraska Building & Investment Company, one of the appellants, to a parcel of ground, belonging to appellee, and situated between the Lincoln Hotel and the Lincoln Drug Company on P street, Lincoln, Nebraska, one of the business sections of the city. There were buildings situated on these premises at the time, of the value of $15,000; but they were in a bad state of repair, and to render them fit for rental purposes required an outlay of considerable money. By the terms of the lease these buildings were to be razed to the ground and removed. And, also, by the terms of the lease, appellant was to erect a new fire-proof edifice, at least four stories high, and complete the same by January 1, 1921. The covenant to erect this new building was the inducement that caused appellee to enter into the lease. Appellant agreed to pay $250 a month during the life of the lease as rental, and to pay taxes, keep up repairs, ordinary and extraordinary, and to pay all assessments, and keep up insurance, etc. The lease further provided that, if appellant failed to erect the building as agreed, appellee's actual damages should be $15,000. To procure the faithful performance of this lease an indemnity bond in the sum of $15,000 was given, with the Nebraska Building & Investment Company as principal and certain other of the appellants as sureties.

Appellant began the actual erection of a building, excavating, building footings and concrete walls and other foundation work, and then defaulted and ceased work entirely. After January 1, 1921, the Nebraska Building & Investment Company went into the hands of a receiver. One William E. Barkley was appointed receiver, and later the leasehold interest in the premises was sold to one Eugene C. Eppley, who is now in possession. In all other respects there has been no default in

Gustin & Co. v. Nebraska Building & Investment Co.

the terms of the lease, and the taxes and rentals are paid.

After January 1, 1921, this action was instituted on the bond, to recover the $15,000 damages. A trial by the court without a jury resulted in a judgment for appellee for the full amount. To reverse this judgment appellants have prosecuted an appeal to this court.

Appellants argue that the excavation and foundation work that has been done on the property has added value to the property far in excess of $15,000, and hence appellee is the gainer and the damages provided for in the bond should be treated as a penalty and recovery denied. This argument overlooks the rights of appellee under the contract. The inducement that caused appellee to enter into the contract was the building of the new structure. Possibly appellee did not have the money to put up the building itself. If not, of what value will this hole in the ground and foundation work be to appellee? If the old buildings had been repaired, appellee might have realized a better rental; without the building being erected appellee is not sure of his rent.

A modern building should last practically forever. If so, this would be a very valuable property at the end of the lease with such a building standing upon it. Then, too, is such a contract to be treated so lightly? Is it something to be brushed aside as a sort of a dream? If appellee could have erected the building itself, its rentals, no doubt, would have been large from such a structure. But it contracted to forego these large rentals and accept $250 a month and apply the balance for 99 years to pay for the new edifice. If we figure from this standpoint, appellee will pay a pretty big price for its building in 99 years. Everything considered, it seems to us that in this larger view, looking to the future, almost a century, rather than to the present, appellee is the loser rather than the gainer. And his rent has been rendered insecure, problematical, and very uncertain. The consideration for this contract is ample.

The intention of the parties to this contract was to make certain the payment of the rent through the years to come, and to this end the inducement was the construction of this building. In determining the amount of the bond, it seems quite natural that the value of the old buildings removed should be adopted. Rentals to the amount of the value of the old buildings, at least, should be protected.

We now come to the question of damages. The evidence shows a six-story building of fire-proof construction would cost about $581,000. The evidence shows a four-story building of like construction would cost one-fourth less. At least such a building, then, would cost more than $400,000. It was the duty of appellants to keep the building in repair, so that on the termination of the lease the building should be worth at least what it cost. Under such circumstances the measure of damages is the cost of construction. 24 Cyc. 1109; 1 Tiffany, Landlord and Tenant, sec. 117; 2 Underhill, Landlord and Tenant, sec. 542; *Barnhart v. Boyce*, 102 Ill. App. 172. And some courts adopt the measure as the present worth of the cost of construction; that is, such a sum as will, at the legal rate of interest, produce the fair cost of the building at the end of the term. *Wentworth v. Manhattan*, 218 Mass. 91.

It is reasonably certain the actual damages will far exceed $15,000. Indeed, the damages from the failure to pay rent are liable to far exceed $15,000. This is one of these situations where the damages are uncertain, problematical, and not readily ascertainable by any known rule. These facts were all considered by the parties, and a careful survey of the situation made. After due deliberation and careful thought, the parties themselves agreed that the damages should be $15,000. *Gillilan v. Rollins*, 41 Neb. 540; *Lee v. Carroll Normal School Co.*, 1 Neb. (Unof.) 681. In the light of the foregoing authorities we are of the opinion the true measure of damages in this case is the $15,000 named in the lease.

and bond and that the same are liquidated damages· and not a penalty.  17 C. J. 960, sec. 259; *Crawford v. Heatwole,* 110 Va. 358, 34 L. R. A. n. s. 587.

It is also argued that this action was prematurely brought.  The lease reads that a four-story building of fire-proof construction shall be completed by January 1, 1921; and the bond reads that the principal and sureties will pay $15,000 as liquidated damages on or before January 10, 1921, if a breach occurs in the covenant to build.  Section 9 of the lease reads as follows:

"The lessee agrees that within one year after receiving possession it will begin erection of a building of fire-proof construction covering the entire ground of a basement and grade (or first) story and as many stories above the first story as lessee may choose to build, and such stories may be in such form as lessee shall desire.  Lessee will add other stories whenever it desires so to do, but at least four (4) stories by January 1, 1921."

The last part of the bond reads as follows:

"Now, therefore, the Nebraska Building & Investment Co., as principal, and Frank E. Schaaf, J. H. Gore, E. O. Gregg, H. L. Lohmeyer, R. W. Johnston and Joseph Sukovaty, Jr., as surety, do separately and collectively for themselves, their heirs, administrators, successors and assigns firmly bind themselves to the payment to lessor on or before January tenth, nineteen twenty-one, of the sum of fifteen thousand ($15,000.00) dollars as liquidated damages should lessee fail in its covenants as set forth in section nine (9) of said lease."

There is little room for construction here.  The intent seems plain.  Since the life of the lease runs beyond the life of this generation, some time had to be fixed for the completion of the structure.  If the life of the lease had been for some short period of time, say five or ten years, it might not have been necessary to fix a time, for parties might reasonably expect to outlive their lease and enforce it at the end thereof, if necessary.  But in a

lease to run for nearly a century it was necessary to fix a time for completing the building, for parties have a right to know whether contracts are being fulfilled, so they may enforce them while living, if they are not.

It appearing that some time was necessary to be fixed for completing the building, a reasonable time became a proper subject of contract. Two years was certainly a reasonable time.

The breach occurred January 1, 1921. The statute of limitations began running against an action on the bond at that time. There was no assurance that Eppley intended to build. The lower court was unable to tell what Eppley's intentions were, and we are not from the record before us. Everything considered, we are of the opinion the action was timely and not prematurely brought.

The judgment of the lower court is right, and is

AFFIRMED.