ABEL CONSTRUCTION COMPANY, A CORPORATION, APPELLANT, v. SCHOOL DISTRICT OF SEWARD, IN THE COUNTY OF SEWARD, IN THE STATE OF NEBRASKA, A CORPORATION, APPELLEE.

195 N. W. 2d 744

Filed March 17, 1972. No. 38075.

James W. Hewitt, for appellant.

Blevins, Bartu & Blevins, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an action by Abel Construction Company, plaintiff, to recover from the defendant, School District of Seward, $5,175 alleged to be the balance owed upon a contract for the construction of an athletic track with a rubber asphalt resilient surface and other improvements at the Seward high school. The contract provided for liquidated damages of $75 for each day completion of the construction extended beyond the specified 60-calendar day "contract period." The defendant had withheld the liquidated damages for a claimed completion delay of 69 days. The trial judge determined as a matter of law that since the plaintiff had failed to request in writing an extension of the contract period as provided for in the construction contract the only question to be decided was the extent of the delay, and he therefore submitted to the jury the question of whether the contract was completed September 1, 1967, or September 8, 1967. The jury returned a verdict for the plaintiff in the amount of $525. The plaintiff appealed. We affirm the verdict and the judgment.

The plaintiff in its petition pled the contract by the incorporation of a copy thereof, admitted it had not

completed the construction within the time provided in the contract, and alleged that the work was completed September 1, 1967, which was 60 days after the stipulated contractual completion date. It alleged that the delay was excusable because: (a) Rain during the period May 27, 1967, to July 3, 1967, was so far in excess of normal and in such quantity that construction could not take place during that period. (b) The defendant was responsible for a portion of the delay because a testing laboratory hired by the defendant did not complete determination of the "leveling mix" and the "rubber mix" and furnish the same to the plaintiff until June 20 and 23, 1967. (c) The rubber manufacturer's representative was required to be present at the laying of the resilient layer and through no fault of the plaintiff he was not able to be present until July 24, 1967.

The plaintiff further pled that the contractual provision for liquidated damages was void because it constituted a penalty and alleged that the defendant suffered no actual damage because of the delay.

The defendant in its answer pled specifically various provisions of the contract upon which it relied and to which we will refer in this opinion as required, including the failure of the plaintiff to request an extension of time in accordance with contract provisions. In an amended reply filed on the day trial began plaintiff alleged an estoppel to rely upon this contract provision because an employee of the defendant's engineer, one Charles Kemery, had told the plaintiff "not to worry about liquidated damages, as time lost would be adjusted by" the engineer.

The principal issues on appeal as raised by the assignments of error are: (1) Is the contract provision for liquidated damages void? (2) The effect, as related to the matters pled in excuse, of the contract provision requiring that the contractor request in writing extensions of the "contract period" and the effect thereon of the

statement of Kemery. All of which of course reaches the question of the propriety of the partial direction of the verdict by the trial court.

We first discuss the validity of the provision for liquidated damages. The contract provided: "Work shall be commenced within 10 days from the date of the written Notice to Proceed and shall be completed within sixty (60) calendar days after the date of the Notice to Proceed. . . . *Liquidated Damages*. As time is an essential element of the contract, all work shall be completed within the contract period. For each calendar day that any work remains uncompleted after the end of the contract period, the amount of Seventy Five Dollars ($75.00) per calendar day will be assessed, not as a penalty, but as a predetermined and agreed amount to be used to pay, in part, any additional engineering expenses incurred by the Owner after the end of the contract period."

At the trial evidence was adduced by defendant to show that: Because of the delay the defendant incurred additional engineering expenses of $1,137.16; it incurred in unascertainable amounts additional expense in moving bleachers which would have been avoided had the work been completed in time so that the movement could have been made with regular employees; it was unable to use for a period of time some associated athletic facilities; there was expense and inconvenience in protecting the work while it cured which would have been avoided; and there were other items of inconvenience to the school and public to which no monetary valuation could be affixed. The total contract price was $80,896.98.

This court has had occasion previously to consider the question as to whether a liquidated damage provision similar to that here is valid. In Parsons Constr. Co. v. Metropolitan Utilities Dist., 170 Neb. 709, 104 N. W. 2d 272, the court had before it such a provision calling for liquidated damages of $150 per day. We there said: "In the case of Stanford Motor Co. v. Westman, 151 Neb.

850, 39 N. W. 2d 841, this court held: 'As a general rule, the question of whether a sum mentioned in a contract is to be considered as liquidated damages or as a penalty is a question of law, dependent on the construction of the contract by the court.' The court cited 15 Am. Jur., Damages, § 246, p. 678, as follows: 'In such cases the court must find out whether the payment stipulated is in truth liquidated damages or a penalty. The question whether it is the one or the other is a question of law and one quite independent of the agreement of the parties to call it the one or the other.' The court further said: 'We said in Gustin & Co. v. Nebraska Building & Investment Co., 110 Neb. 241, 193 N. W. 269: ". . . where the damages are uncertain, and not readily capable of exact ascertainment by any known rule, and the parties surveyed the whole situation at the time of contract, and agreed upon the amount of damages, in case of a breach in the contract to construct a building by a certain time, such sum, in case of a breach, is the true measure of recovery and is liquidated damages and not a penalty." ' The court further held: 'If the damages arising from a breach of the contract are difficult of ascertainment or admeasurement, and if the stipulated amount is not disproportionate to the amount of damages that may be reasonably anticipated from the breach, it will usually be regarded as a provision for liquidated damages.' See, also, Sofio v. Glissmann, 156 Neb. 610, 57 N. W. 2d 176; Edgar v. Anthes, 109 Neb. 546, 191 N. W. 682."

At 5 Williston on Contracts (3d Ed.), § 785, p. 733, we find the following: "It is commonly provided in building and construction contracts that there shall be deducted from the contractor's compensation a fixed sum for each day's delay in performing the contract beyond the day fixed therein. Such damages are obviously graded according to the extent of the breach, increasing proportionately with each day's delay. Moreover, each day's delay, while unquestionably injurious, is in-

jurious frequently in ways that are difficult to estimate. Accordingly, unless the sum fixed in the contract is very unreasonable the provision is treated as one for liquidated damages." See, also, 5 Corbin on Contracts, § 1072, p. 402. We hold that the trial court's determination that the contract provision for liquidated damages was not penal is correct.

We next turn to the question whether the delay in performance was excusable under the terms of the contract and whether there was a jury question on any point related to this issue other than the contract completion date. The contract provides: "59. . . . The Contractor expressly covenants and agrees that in undertaking to complete the work within the contract period fixed in the contract documents, he has taken into consideration and made allowances for all delays and hindrances incidental to such work, whether growing out of delays in securing materials or workmen, or otherwise. *Should the Contractor be delayed in the prosecution and completion of the work by any cause beyond his control,* he shall have no claim or right of action for damages from the Owner for any such cause or delay, unless the cause or delay is the result of fraud or active interference by the Owner. The Contractor will in such case be granted an extension of the time specified for completion of the work as the Owner may award in writing on account of such delay, provided however, that claim for such extension of time is made by the Contractor to the Owner, through the Engineer, in writing, within two weeks from the time when any such alleged cause for delay shall occur. The Owner, through the Engineer, reserves the right to withhold granting of any time extensions until the stipulated contract period is about to expire.

"The Owner at the Owner's sole discretion may waive the above requirements and grant extensions of time for any reason or reasons the Owner deems valid. Time extensions, however, will not be granted for rain, wind,

flood or other natural phenomenon of normal intensity for the locality where work is performed.

"An extension of the contract period may be granted by the Owner for any of the following reasons: . . . b. Delays caused by the Owner . . .." (Emphasis supplied.)

Contract specification GC (general condition) 58 grants the owner the right to withhold liquidated damages from payment, contains other provisions re liquidated damages, and then provides: "Extensions of time granted by the Owner in accordance with the provisions of 'Extensions of the Contract Period' *shall not operate to the contrary, unless such extensions granted by the Owner specifically provide for the waiving of liquidated damages* during and over such period of time extension." (Emphasis supplied.) GC-68: "During freezing weather or weather which would be unsuitable for the proper execution of the work in a first-class manner, all work must be stopped and properly protected from possible injury."

We note first the claim that because of abnormal rainfall during the period May 27, 1967, to July 3, 1967, plaintiff was prevented from proceeding with the work. Competent evidence received by the court would support such a conclusion. The plaintiff argues that because of the provisions of GC-68 above it was not required to make a written request for extension under GC-59. We do not so construe the contract. GC-59 by its terms refers to and contemplates delays caused by unusual weather conditions. GC-68 refers to protecting the work from any weather conditions, normal or abnormal, which would be harmful to it. A contractual requirement that requests for "contract period" extensions must be in writing has been upheld by this court as binding. Parsons Constr. Co. v. Metropolitan Utilities Dist., *supra;* Olson Constr. Co. v. Commercial Building & Inv. Co., 127 Neb. 609, 256 N. W. 22; Carter v. Root, Inc., 84 Neb. 723, 121 N. W. 952.

We next turn to an examination of the two defenses

of excusability labeled (b) and (c) in the second paragraph of this opinion. Assuming the testing laboratory and the manufacturer's representative were parties for whose action or inaction the defendant was responsible and that this would constitute a legal excuse the evidence does not show the alleged inaction of the two parties caused the delays in the performance of the contract. All the evidence shows is the testing laboratory furnished the required formulas on the dates alleged and the manufacturer's representative was not present until July 24, 1967. There is no evidence whatever to show the plaintiff was ready to make use of the mixing formulas before it received them or that it could or would have completed the contract in time had they been furnished earlier. Neither is there any evidence that the laboratory would not have furnished the information earlier had plaintiff made request therefor. The record as a matter of fact clearly supports contrary inferences. The contract provision GS-7-1 states in part: "The Contractor shall submit samples of all materials to be used in the rubber asphalt mix to a testing laboratory designated by the Owner." There is no evidence to show when the samples were furnished. The record does show the plaintiff did not order the rubber needed for the construction until May 19, 1967. Receipt of the order was confirmed May 24, 1967. There is no showing as to when the shipment arrived. The record does show that the plaintiff was not ready to lay the resilient course until July 22, 1967, 22 days after the expiration of the "contract period."

As to the presence of the manufacturer's representative the record shows that he was delayed 2 days beyond the date agreed upon with the contractor. The construction contract contains no provision requiring the presence of the manufacturer's representative. This was a matter insisted upon by the plaintiff and the manufacturer. The defendant was in no way responsible in this connection.

For the reasons just set forth we are not called upon to decide the plaintiff's contention that where the owner is responsible for the delay the contract provisions requiring written requests for extensions and the liquidated damages provision do not apply. It relies upon Peter Kiewit Sons' Co. v. Pasadena City Junior College Dist., 59 Cal. 2d 241, 28 Cal. Rptr. 714, 379 P. 2d 18. Even if the contrary decisions of this court, viz., Olson Constr. Co. v. Commercial Building & Inv. Co., *supra*, needs reexamination, as plaintiff contends, this is not a case in which we can do it.

We have carefully examined the record relative to the contention of estoppel claimed to have arisen because of the alleged statement of Charles Kemery. The plaintiff's president, Costin, testified to a conversation as follows: "A. I said, 'I am concerned with the passing of the calendar days and I would like to request an extension of time.' And he answered, 'Jim, you are unduly concerned, we will handle this as we always do when the job is complete.' Q. And did he tell you who would handle it or how it would be handled? A. He said, 'Our company will handle this when the job is complete.' " Costin further testified to his conclusionary view that Kemery was the engineer in charge for the corporate engineer. He testified to the functions which he observed Kemery perform. There is testimony of the corporate engineer's representative which classified Kemery only as an inspector. Be that as it may the contract itself defines the authority of the engineer and the inspector. Neither definition of authority includes the authority to waive general conditions of the contract. Such authority as the engineer may have in this respect seems confined to plans and specifications. There is in the record no evidence of any act, or failure to act, by the defendant which could give rise to an apparent authority on the part of Kemery to waive the contractual requirement that requests for extensions of the "contract period" and the granting of such requests must

be in writing. At this point it is pertinent to call attention to the provision of GC-58 already noted that the granting of extensions of time does not release the provision on liquidated damages "unless such extensions granted by the Owner specifically provide for the waiving of liquidated damages during and over such period of time extension."

"Apparent or ostensible authority or agency for which a principal may be liable must be traceable to him and cannot be established by the acts, declarations, or conduct of the agent. The principal is only liable for appearance of authority caused by himself. Ostensible and apparent agency have been treated in this jurisdiction as being synonymous. In Farmers Cooperative Shipping Assn. v. Adams Grain Co., 84 Neb. 752, 122 N. W. 55, this court said: 'It is well established that the authority of an agent cannot be established by his own acts and declarations. . . . Consequently, when we speak of the apparent authority of an agent as binding his principal, we mean such authority as the acts or declarations of the principal give the agent the appearance of possessing. Closely related to this doctrine of apparent authority, and really a part of it, is the doctrine of estoppel under which a party who has knowingly permitted others to treat one as his agent will be estopped to deny the agency.'

"Maryland Casualty Co. v. Moon, 231 Mich. 56, 203 N. W. 885, states: 'The apparent authority for which the principal may be liable must, however, be traceable to him and cannot be established by the acts and conduct of the agent. The principal is only liable for that appearance of authority caused by himself.' " Rodine v. Iowa Home Mutual Cas. Co., 171 Neb. 263, 106 N. W. 2d 391. See, also, Restatement, Agency 2d, § 27, p. 103.

The judgment of the district court is correct and is affirmed.

AFFIRMED.