PEOPLE, *for use of* LAPEER COUNTY BANK, *v.* O'CONNELL.

1. DRAINS—ISSUING ORDER BY DRAIN COMMISSIONER ADMINISTRATIVE ACT.

> The issuing of an order by a county drain commissioner is not the result of a judicial determination, but is an administrative or ministerial act.

2. SAME—ISSUING ORDERS ILLEGALLY VIOLATION OF OFFICIAL DUTY —PUBLIC OFFICERS.

> The issuing of orders by a county drain commissioner before any work had been done under the contracts, *held*, wilful and intentional violations of his official duty, under the circumstances of this case.

3. SAME—BONDS—SURETIES LIABLE FOR ILLEGAL ORDERS—PUBLIC OFFICERS.

> In an action on the bond of a county drain commissioner conditioned upon the faithful performance of his official duties the sureties thereon are liable to the *bona fide* purchaser from the contractor of drain orders illegally issued for any damages sustained thereby.

4. SAME—RIGHTS OF ASSIGNEE OF ILLEGAL ORDERS NOT INVOLVED IN TORT ACTION ON BOND.

> Where plaintiff's action is based upon the wrong or tort committed by the county drain commissioner, and not as the assignee of said drain contractor who received the illegal orders, defendant's contention that, since plaintiff's assignor was a party to any error or fraud in the issuance of said orders and could not maintain an action thereon, therefore his assignee had no greater rights than he possessed, *held*, without force, under the circumstances.

5. SAME—BONDS—DRAIN COMMISSIONER—PARTIES PROTECTED BY BOND—PUBLIC OFFICERS.

> Since the bond of a public officer to faithfully perform the duties of his office is made for the benefit of any and all to whom he owes an official duty, it cannot be said that the *bona fide* purchaser of illegally issued drain orders is not within the class for whose benefit the legis-

lation imposing restrictions upon the authority of the
drain commissioner to issue orders · was enacted.

6. APPEAL AND ERROR—EVIDENCE—HARMLESS ERROR.
  The admission in evidence of a decree in another case, if
  erroneously admitted, *held*, without prejudice to the rights
  of defendants.

7. SAME—FORM OF ACTION—PARTIES—AMENDMENT.
  A question as to the form of the action not presented to
  the court below, *held*, without merit, especially in view
  of the broad statute of amendments under which
  the title of the case could be amended even in
  the Supreme Court as to the description of the
  plaintiff, and under 3 Comp. Laws 1915, § 12353,
  relating to parties and actions in so far as it
  relates to an action upon the bond of a public officer,
  a party has the right to sue in his own name thereon.

Error to Sanilac; Beach (Watson), J.     Submitted
April 12, 1921.     (Docket No. 79.)     Decided June
6, 1921.

Assumpsit by the people of the State of Michigan,
for the use and benefit of the Lapeer County Bank,
against William F. O'Connell and another as sureties
on an official bond.     Judgment for plaintiff.     De-
fendants bring error.     Affirmed.

*C. F. Gates* and *Fred A. Farr,* for appellants.

*Elmer Shumar,* for appellee.

STONE, J.     The Lapeer County Bank is a banking
corporation with its place of business at Imlay City,
Lapeer county.     Stuart B. Nicol was elected county
drain commissioner for the county of Sanilac in
November, 1916, and on December 6, 1916, he exe-
cuted his official bond to the people of the State of
Michigan in the penal sum of $5,000, signed by him-
self as principal, and by the defendants herein as

sureties.    Said bond was conditioned upon the faithful discharge by the said Stuart B. Nicol of the duties of his office as county drain commissioner aforesaid, and was duly approved and filed.   On April 16, 1918, said Nicol, as such commissioner, let the contract for part of the construction work on what was known as the Frost drain to Ross Davis, and on August 28, 1918, he let to said Davis the contract for construction of the Ingles drain, so called.   On April 19, 1918, Nicol as county drain commissioner, issued drain order No. 1,403 for $1,000, purporting to be for construction work on the Frost drain, and payable to the order of Ross Davis.    And on August 30, 1918, said Nicol, as such drain commissioner, issued order No. 1,520 for $2,500, purporting to be for construction work on the Ingles drain, and payable to the order of Ross Davis.

No part of the construction work on the Frost drain had been done at the time order No. 1,403 was issued; and no part of the construction work on the Ingles drain had been done at the time the order No. 1,520 was issued.   On May 3, 1918, Ross Davis sold the order No. 1,403 on the Frost drain fund to the plaintiff bank for $939.76, and on August 31, 1918, he sold to plaintiff bank the order No. 1,520 on the Ingles drain fund for $2,391.71.   Both of said orders were made payable March 15, 1919, were duly presented for payment, and payment refused.   At the time they were presented for payment, the county treasurer of the county of Sanilac had been served with injunction restraining payment.

Stuart B. Nicol, the county drain commissioner, died about December 15, 1918.   This suit was brought against the sureties on his official bond to recover the money paid for the two orders above described, with interest at the legal rate from the date of their purchase by the plaintiff bank.

Section 4904, 1 Comp. Laws 1915, as amended by Act No. 316, Pub. Acts 1917, provides that it shall not be lawful for the county drain commissioner to issue orders on the fund of any drain exceeding two-thirds of the amount earned on any contract, until after the acceptance of said work by the county drain commissioner, and the said certificate of the surveyor or the drain commissioner is filed by said county drain commissioner. The case was tried by the court without a jury, and the trial court filed findings of fact and conclusions of law. After a statement of the case, and that the drain commissioner was deceased, and Ross Davis was uncollectible, and after stating the claims of the defendants upon the trial, the court found as follows:

"No work had been done on the drains involved to any appreciable extent at the time of issuing said orders, and said orders were issued by said drain commissioner before the requisite amount of work had been done, under the contract as required by statute.

"The court finds that the law of this State holds a drain commissioner and his sureties liable for torts committed in his official capacity. The orders involved in this case were not negotiable paper, but it is common knowledge that contractors obtain financial aid from banks on these orders; they are not payable presently, but have to await the levy and collection of the tax, and the court finds that the signature of the drain commissioner on these orders was sufficient warrant for the bank to treat them, in the hands of the contractor, as lawfully issued; that the purchases were made in good faith, and full consideration paid for them by the plaintiff bank.

"The bank is not suing in this case as the assignee of Davis but for a wrong, committed by the drain commissioner in his official capacity.

"The claim that there was a judicial determination of the amount of work done is not backed by any record; the issuing of the orders was an administrative act, and the court must find that the commissioner issued these orders with knowledge that they were

likely to be negotiated.  His object was, possibly, to help finance the contractor and so secure construction of important drains, but the act was unlawful, notwithstanding."

The court then finds the amount due the plaintiff and entered judgment therefor.

No amendments were proposed to the findings, but all of the findings both of fact and law appear to be excepted to.  We think the only question raised by the exceptions is that the findings do not support the judgment; and we shall consider that question only.

1. The first contention of counsel for appellants is, that the issuing of the orders by the commissioner involved judicial decisions, and that no private action will lie against the commissioner or his sureties for any error in such decisions; and the following cases are cited in support of the proposition: *Pawlowski* v. *Jenks,* 115 Mich. 275; *Amperse* v. *Winslow,* 75 Mich. 234; *Bailey* v. *Van Buren Circuit Judge,* 128 Mich. 627.   These cases relate to the approval of liquor bonds by boards or bodies, and we think are not at all controlling of the question we are here considering.

We do not agree with the contention of counsel that the issuing of the orders by the commissioner was the result of a judicial determination.   The trial court found, and there was evidence to support the finding, that no work had been done under the contracts at the time the orders were issued.   It seems to us that the act of the commissioner in issuing the orders, under the circumstances shown in the case, was a wilful and intentional violation of his official duty; and we agree with the circuit judge that it was an administrative or ministerial act.

In *Raynsford* v. *Phelps,* 43 Mich. 342, it was held that a public officer is liable to private individuals for

injuries resulting to the latter from his failure to perform ministerial duties in which the latter have a special and direct interest, and that he is also liable for the failure to perform duties of a judicial nature if he neglects them maliciously.

The purchase of these drain orders by the plaintiff bank was a lawful transaction, and, as such purchasers, they had a direct interest in the duties of the drain commissioner attendant upon the issuing of the orders. As illustrating the general rule concerning liability of sureties on official bonds, the following cases are cited: *People v. Treadway,* 17 Mich. 480; *Doran v. Butler,* 74 Mich. 643; *Curtiss v. Colby,* 39 Mich. 456.

In *People v. Treadway,* where the action was brought against a county clerk and the sureties on his official bond, in speaking of certain moneys drawn upon an order wrongfully filled up and issued by the clerk, Justice CAMPBELL, speaking for this court, said:

"It certainly is very plain that this money was obtained by a misuse of his official authority to sign warrants, and that wrongful act was an official act. If such an officer is to be regarded as acting unofficially whenever he violates his duty, it is not easy to see what object there can be in requiring official bonds. They are not meant to be mere formalities, and they can only be made to secure against the consequences of some sort of misdoings. Their object is to obtain indemnity against the use of an official position for wrong purposes, and that which is done under color of office, and which would obtain no credit except from its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it."

The case of *National Bank of Redemption v. Rutledge,* 84 Fed. 400, in the United States circuit court for the northern district of Ohio, is a well considered

case. Reading from a headnote we find the following:

"Any act which, if done genuinely and honestly by an officer would be an official act, is, if done dishonestly and fraudulently, an act done by virtue of his office, and the sureties on his bond conditioned for the 'faithful discharge of the duties of his office' are liable for injuries resulting therefrom."

When the commissioner issued the orders before the work was begun, it was an act done by virtue of his office, and it seems to us clear that the sureties on his bond are liable to this plaintiff for the resulting injuries.

2. The second defense urged by appellants is that plaintiff's assignor Davis, being a party to any error, mistake or fraud of the drain commissioner, could maintain no action either against his associate in such error, mistake or fraud, or the sureties on such associate's official bond, and the act gave no greater right to his assignee than he possessed. Were this an action upon the orders there would be much force in this position of appellants, but it should be borne in mind, as stated by the circuit judge in his finding, that the bank is not suing in this case as the assignee of Davis, but for a wrong or tort committed by the drain commissioner in his official capacity. 22 R. C. L. p. 506. If that officer had performed his duty there would have been no orders issued, or purchased by the plaintiff, and hence no loss sustained by the plaintiff. While the drain orders were non-negotiable, yet they were choses in action, were signed by the commissioner officially, and were purchased, in good faith and for a valuable consideration, by plaintiff bank. Counsel cite in support of this claim *Van Akin* v. *Dunn*, 117 Mich. 421. This case is not controlling as to the contention of appellants, but the case is significant upon the question of judicial

determination, and is authority against the position of appellants upon that subject.

3. The third claim of appellants is to the effect that neither the drain commissioner nor his sureties owed any duty, under the statute, to the plaintiff, and that the plaintiff cannot be heard to complain. We note the authorities cited by counsel upon this subject, but do not think they support the contention here made. The theory of the defendants seems to be that, although the issuing of these orders by the drain commissioner was a breach of his duty as a public official and contrary to the provisions of the statute, still, the purchasers of the orders have no right of action against the commissioner, or the sureties on his bond, because they are not within the class for whose benefit the legislation imposing restrictions upon the authority of the commissioner to issue orders was enacted.

We held in *Kent County* v. *Krakowski*, 207 Mich. 631, that the bond of a public officer, to faithfully perform the duties of his office, is made for the benefit of any and all to whom he owes an official duty. See, also, *City of Grand Rapids* v. *Krakowski*, 207 Mich. 483.

We again refer to the case of *National Bank of Redemption* v. *Rutledge, supra,* where this question was considered. That was a case where county commissioners in the State of Ohio had authorized the issue of drain bonds in a certain amount, and the county auditor fraudulently issued bonds in excess of the amount authorized. We invite attention to that well considered opinion where the argument here· advanced is met and fairly answered. It was there held that such bond was not given simply to protect the funds and people of the county from loss by reason of the officer's failure to discharge the duties of his office, but as well to protect the whole world

from injury resulting from his abuse of his official position. Speaking of the contention that the plaintiffs were not of the class designed to be protected by the bond the court, in the last cited case, remarks at page 407:

"But, even on that theory of protection only for the county and none others, surely the people are just as much interested in protecting their credit as they are in protecting their actual funds."

We have examined the other questions urged as error at the trial, but think they are without merit. The trial court seems to have admitted in evidence a decree in another case in that court involving the question of these and similar orders. We are of opinion that if the same was erroneously admitted, it was error without prejudice to the rights of the defendants. As to the form of the action upon the bond, the question was not presented in the lower court, and we think it is without merit, as, under our broad statute of amendments, the title of the case could be amended even in this court, as to the description of the plaintiff. It will be noted section 12353, 3 Comp. Laws 1915, relating to parties and actions in so far as it relates to an action upon the bond of a public officer, is permissive as to the right of a party to sue in his own name thereon.

We find no error in the record, and the judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.