## MARYLAND CASUALTY CO. *v.* MOON.

1. EQUITY—JURISDICTION MUST BE RAISED BY ANSWER OR MOTION TO DISMISS.

   After defendants had answered a bill in equity issuably and had taken proofs upon the merits, it was too late to object to the jurisdiction of the court; 3 Comp. Laws 1915,

§ 12456, requiring that jurisdiction be raised in the answer or presented on motion to dismiss.[1]

2. PRINCIPAL AND AGENT—PRINCIPAL BOUND BY APPARENT AUTHORITY WHERE THIRD PERSONS IGNORANT OF LIMITATION ON AUTHORITY.

The principal is bound to third persons acting in ignorance of any limitations, by the apparent authority given, and not by the express authority, but the apparent authority must be traceable to him and cannot be established by the acts and conduct of the agent.[2]

3. SAME—PRESUMPTION THAT AGENCY IS GENERAL.

Parties dealing with an agent have a right to presume that his agency is general and not limited.[3]

4. SAME—PRESUMPTION IS THAT AGENT IS DEALING WITHIN SCOPE OF AUTHORITY.

The presumption is that one known to be an agent is dealing within the scope of his authority.[4]

5. INSURANCE — CASUALTY COMPANY BOUND BY AGENT ACTING WITHIN APPARENT AUTHORITY.

Where an agent of a casualty company had a large display placard in his office advertising the business of the company, and, among other things, fidelity and surety bonding, and the certificate issued to said agent by the State insurance commissioner, on the application of the company, authorized him to write fidelity and surety bonds, there was such a holding out by the company that the agent had such authority as to render it liable on said bonds, although in fact it had conferred no such authority upon him.[5]

6. DRAINS—COMMISSIONERS AND SURETIES NOT LIABLE ON EXCESSIVE ORDERS ALTHOUGH AUTHORIZING THEIR SIGNATURES TO PROPER ORDERS.

An agreement among three drain commissioners that each might sign the names of the others in issuing orders to the contractor on a tri-county drain fund did not render two of them or their sureties liable for fraudulent orders issued by the other commissioner in violation of Comp. Laws Supp. 1922, § 4904, where issued without their knowledge or consent.[6]

[1]Equity, 21 C. J. §§ 147, 148 (Anno); [2]Agency, 2 C. J. § 211; [3]Id., 2 C. J. § 649; [4]Id., 2 C. J. § 652; [5]Insurance, 32 C. J. §§ 140, 181; [6]Drains, 19 C. J. § 42 (Anno).

7. Principal and Surety—Sureties Liable for Full Penal Sum Although Signing Only at Bottom of Justification.

> Where it was recited in the body of a bond that the sureties were held and firmly bound in the full penal sum, a claim that because they did not sign the body of the bond, but signed their names at the bottom of the justification, that therefore their liability is limited to the amount set opposite their names, cannot be sustained, and they are *held* to be jointly and severally liable for the full penalty.[7]

Cross-appeals from Cass; Des Voignes (L. Burget), J. Submitted October 22, 1924. (Docket No. 128.) Decided May 14, 1925. Rehearing denied July 16, 1925.

Bill by the Maryland Casualty Company against Abner M. Moon and others to determine the liability under certain drain surety bonds. From the decree rendered, plaintiff and certain defendants appeal. Modified and affirmed.

*Mason, Cox & McCaslin* (*Stevens T. Mason* and *Charles E. Goodrich,* of counsel), for plaintiff (appellant).

*John J. Sterling,* for defendants Myers *et al.* (appellants).

*Earl L. Burhans,* for defendant Home State Bank of Lawrence (appellant).

*William J. Barnard,* for defendant Turner (appellant).

*L. J. Lewis,* for defendants Ashley *et al.* (appellants).

*T. J. Cavanaugh,* for defendant First National Bank of Paw Paw (appellee).

*Coy W. Hendryx,* for defendant Lee State Bank (appellee).

---

[7]Principal and Surety, 32 Cyc. p. 117.

McDONALD, C. J.    A tri-county drain, known as the Dowagiac river drain, was to be built through the counties of Van Buren, Cass and Berrien.    The drain commissioners were Moon of Cass, Ashley of Van Buren and Myers of Berrien.    A section of the drain in Cass county was let to one Clarence J. McElheny.    The contract price was $39,372.    On this section orders were issued to McElheny amounting to $132,397.80, more than three times the contract price.    Subsequently Moon and McElheny were tried and convicted of conspiracy to defraud.    A large number of the orders issued to McElheny were not paid and are involved in this litigation.    One order of $4,350 is owned by the Home State Bank of Lawrence.    Three orders are owned by First National Bank of Paw Paw for $5,600, $2,700 and $4,200.    Three orders by George Turner for $3,095, $2,055 and $3,010.    Eight orders by the Lee State Bank for $3,000, $2,000, $4,600, $4,600, $4,000, $4,500, $2,700 and $2,700.    Three orders by A. D. Hoppin for $4,000, $1,500 and $1,500, making a total outstanding and unpaid of $60,110.    The plaintiff is surety on the bond of Mr. Moon in the penal sum of $2,000; defendants Goss, Porter, Harvey and DeHaven are sureties on the bond of Charles E. Ashley, in the sum of $5,000; defendants Myers and Shultz are sureties on the bond of Harold Myers in the sum of $5,000.    The Fidelity & Casualty Company is surety on the bond of Abner M. Moon in the penal sum of $4,000.    The other defendants are the holders of orders.    When this bill was filed suits at law were pending against the three drain commissioners and their several sureties.    On the theory that all of the questions involved could best be tried out in one suit, and that all of the parties must eventually come into a court of chancery for an equitable distribution of their recoveries, the bill was filed.    The drain commissioners, their sureties and those holding unpaid orders were made parties.    All

appeared by counsel and answered issuably. After the taking of testimony some of the defendants for the first time raised the question of jurisdiction and moved to dismiss the bill. The circuit judge retained jurisdiction on the ground that the defendants had appeared and voluntarily joined with the plaintiff in submitting the question of their rights and liabilities to the court; that no question of fact was involved; that if the parties proceeded to judgment on the law side of the court, it would still be necessary under the statute for them to come into the chancery court to have their recoveries prorated; and that all of the questions involved could be most conveniently tried out in one action. The various defenses interposed by the several defendants will be stated as the questions are discussed in this opinion.

In determining the issues the court decreed that all of the bonds, including that of the plaintiff, were valid and binding obligations; that the drain commissioners Ashley and Myers participated in the wrong committed by Moon, and that they and their sureties were liable for his acts; that the total amount of the several orders was $60,210, and that the total liability on the bonds was $13,450, which he prorated between the different order holders in proportion to the respective amounts due to them. From the decree entered, Ashley and his sureties, Myers and his sureties, A. D. Hoppin, the Home State Bank of Lawrence, and the plaintiff have appealed.

1. Has the chancery court jurisdiction of the cause? The defendants, who are here questioning the jurisdiction of the court, did not raise the objection until after proofs had been taken on the merits of the bill. The present practice requires that objections to the jurisdiction shall be interposed in the answer or presented on motion to dismiss (Act No. 314, chap. 14, § 4, Pub. Acts 1915 [3 Comp. Laws 1915, § 12456]). Before the enactment of this statute abolish-

ing demurrers, pleas in abatement and pleas to the jurisdiction, it was held that when the grounds of the objection appeared upon the face of the bill and the defendants had answered issuably and had taken proofs upon the merits, it was too late to raise the question of jurisdiction. *Coffey* v. *McGahey*, 181 Mich. 225 (Ann. Cas. 1916C, 923). The rule there announced is applicable here. The objection comes too late.

2. The second question to be considered is the liability of the plaintiff on its bond. The claim is that Mr. Laing, its agent, had no authority to execute the bond. Mr. Laing was an attorney residing in Dowagiac, Cass county, Michigan. He was the agent of the plaintiff with authority, as shown by power of attorney, to execute bonds required of administrators, executors and commissioners for the sale of real property and for receivers and trustees in bankruptcy, but did not have authority to sign such a bond as that in question. Mr. Laing was called as a witness for the plaintiff and testified:

"I recall signing the bond for Abner M. Moon. * * * Mr. Moon came to my office and wanted a bond which he had prepared, amounting to $2,000. He asked me if I represented any surety company and I told him that I did, and I executed the bond then, that is, signed the Maryland Casualty Company's name by myself, attorney in fact, and delivered it to him. * * * I don't recall ever collecting any premium on this policy. * * *

"*Q.* Did you ever report the bond to the Maryland Casualty Company? * * *

"*A.* Well, so far as I can find in my files, I couldn't find that I did."

The bond was approved by the judiciary committee of the board of supervisors and was filed with the treasurer of Cass county. At the outset of the discussion of the question involved, two important facts may be conceded, *first,* that Laing was the agent

of the plaintiff, and *second,* that he had no actual authority to sign the bond.    Mr. Laing was known to be the plaintiff's agent and, as we shall presently show, had apparent authority to transact the business in question.    The following principles of the law of agency are applicable:

"The principal is bound to third persons, acting in ignorance of any limitations, by the apparent authority given, and not by the express authority.    *    *    *
"The question is not, what was the authority actually given? but, what was the plaintiff, in dealing with the agent, justified in believing the authority to be?    *    *    *
"Parties dealing with an agent have a right to presume that his agency is general and not limited.    *    *    *
"And the presumption is that one known to be an agent is dealing within the scope of his authority." *Austrian & Co.* v. *Springer,* 94 Mich. 343, 348-350 (34 Am. St. Rep. 350).

See, also, 2 C. J. pp. 920, 921.

The apparent authority for which the principal may be liable must, however, be traceable to him and cannot be established by the acts and conduct of the agent.    The principal is only liable for that appearance of authority caused by himself.    It is said that,

"Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it."    21 R. C. L. p. 856, § 34.

Apparent authority traceable to the plaintiff. Hanging on the wall of Mr. Laing's office during the time that he represented the plaintiff, was a large display placard on which was painted the following:

"Maryland Casualty Company merits complete confidence.    Fidelity and insurance bonds.    Maryland

Casualty Company, incorporated 1898.   *   *   * Burglary, workmen's compensation, accident, fidelity and surety bonding."

Before Mr. Laing could act as plaintiff's agent it was necessary under a statute of this State to secure a certificate of authority from the insurance commissioner.   This was done on application and requisition of the Maryland Casualty Company.   The certificate issued recited all of the business that the Maryland Casualty had authority to transact in the State, and concluded with the following:

"I hereby authorize Sweet Ins. Agency (E. Bruce Laing, only) resident at Dowagiac to act as agent of said company in the writing of insurance as above specified."

The insurance above specified included "fidelity and surety bonding."   The certificate authorized Mr. Laing to do just what he did in the matter of the Moon bond, and it was issued on the application of his principal.   It did not confer upon the agent any additional authority to that which he actually possessed, but it was a holding out to the public by the plaintiff that Laing had authority to issue fidelity and surety bonds without restriction.   We need pursue the subject no further.   The plaintiff is bound by the appearance of authority with which it publicly clothed its agent.   The circuit judge correctly determined its liability on the bond of Abner Moon.

3. Liability of the drain commissioners and their sureties.   No one questions the liability of commissioner Moon.   It is conceded that he issued these orders in violation of his official duty and contrary to the express provision of the statute which makes it unlawful to issue orders in excess of two-thirds of the amount earned prior to the completion and acceptance of the drain.   Comp. Laws Supp. 1922, § 4904.   In the matter of issuing orders, Moon seems to have been without any terminal facilities.   Re-

gardless of the amount earned he kept on giving out orders until he was stopped, at which time he had authorized the payment of $100,000 in excess of the contract price. Mr. Ashley also issued orders in violation of the statute. Mr. Myers issued none, so that his liability, if he be liable, rests on a different basis than that of the other two commissioners. For this reason we will first discuss the question of his liability.

In the issuing of orders on the drain fund the statute requires joint action on the part of the commissioners, and it is here claimed that Myers is liable for the unlawful orders issued by Moon and Ashley because of an agreement in which he authorized them to sign his name. This agreement, as stated by witness Goss, is as follows:

"Mr. Ashley said, 'How would it be if we signed each others' names to orders when we are not together?' Mr. Myers said, 'I don't know how that would be.' And Mr. Ashley said, 'It will be inconvenient for us to get together and sign orders and sometimes the contractor wants money on short notice and it would be very inconvenient to all get together any time the contractor wanted orders.' And Mr. Myers said, 'I think that would be all right.'"

Claiming to act upon this agreement Moon and Ashley signed Myers' name to all of the orders on which his name appears. It is conceded by counsel in the record, "that all of the orders signed by Myers himself are paid, and the only orders in controversy were given to Mr. McElheny by Mr. Moon and Mr. Ashley." Under these facts, conceding the agreement as claimed, is Mr. Myers and his sureties liable for the tort of Moon and Ashley? The whole case against Mr. Myers and his sureties rests on the claim that he authorized his name to be signed to these unlawful orders. There is no suggestion of other official misconduct. There is no evidence that he knew his name was being signed to these orders. At the time the

agreement was made no illegal orders had been issued. Mr. Ashley testified that they all knew that orders could not lawfully be used in excess of two-thirds of the amount earned on the contract, and, of course, they all knew that the contract price, $39,372, was the limit.   Myers' agreement was made with reference to these limitations.   We have no right to presume that he intended that Moon should use his name in a wholesale criminal raid upon the drain fund.   It was not then contemplated that Moon would fraudulently issue orders amounting to $100,000 in excess of the contract price.   The agreement with Myers had no reference to such orders.   Moon had no more authority to sign Myers' name to those unlawful orders than he had to sign it to a promissory note.   There is no evidence, and can be no presumption that Myers authorized Moon to use his name in any illegal or wrongful act.   The most that can be said as to the scope of the agreement between the commissioners is that it gave each of them authority to sign the others' names to lawful orders.   It appears that after the agreement was made, how long after the record does not show, Moon, in conspiracy with McElheny, fraudulently issued orders representing many thousands of dollars.   Some of these orders were signed by Moon alone.   On most of them he wrote the names of the other two commissioners.   In this rascality Myers had no part, and as far as the record shows had no knowledge that the orders were being issued.   Every order issued by him has been paid and every order to which his name was signed by his authorization has been paid.   The record shows no official misconduct on the part of Mr. Myers, resulting in injury to any of the holders of orders.   Therefore no liability can be attached to him or to his sureties.

Liability of Ashley and his sureties.   So far as liability for the official misconduct of Mr. Moon is

231—Mich.—5.

concerned, what we have said as to Mr. Myers applies to Commissioner Ashley.   He is not responsible for the misconduct of Moon.   Every order issued by Moon for which it is here sought to hold Ashley liable, was unauthorized and illegal.   It cannot be said that Ashley neglected any official duty in failing to sign these orders, because it was not his duty to sign them. If he had signed them he would have performed an unlawful official act for which he and his sureties would have been liable.   As in the case of Mr. Myers the authority which Ashley gave Moon to sign his name was limited to lawful orders.   It would seem to be an unwarranted and unjust extension of the agreement which these commissioners had, to say that they ever intended that Moon should use their names in looting the drain fund.   If there were any evidence of knowledge on the part of Ashley, that Moon was so using his name, the situation would be different, but there is nothing of that kind in the record.   The only orders for which Ashley is liable are the orders which he issued.   It is undisputed that he unlawfully issued three orders to C. J. McElheny.   One of them is signed by himself alone as drain commissioner of Van Buren county.   To the other two he signed the names of Mr. Myers and Mr. Moon.   These orders amount to $7,000 and are now owned by A. D. Hoppin. These are the only orders here involved which are signed by Mr. Ashley and are the only orders for which he and his sureties are liable.   And as to these there is no liability on the part of the other two commissioners.

But it is contended by counsel for Mr. Ashley that his sureties are not liable because they did not sign the body of the bond, and that in any event their liability is limited to the amount set opposite their names in the justification.   The names of the sureties were not signed in the usual place with that of the principal.   The names appear, however, signed with

their seals at the bottom of the justification certificate. In 4 R. C. L. p. 48, it is said:

"The signature is usually placed at the bottom of the instrument, but this is not essential. Unless a statute prescribes a place where the obligator shall write his name, it is immaterial where the signature appears on the instrument, so long as the intention to be bound is evident. The question is always one of fact, as to whether the party, not having signed the bond regularly at the foot, meant to be bound by it as it then stood, or whether he left it unsigned because he refused to complete it."

There is no evidence as to the intention of the sureties except what may be gathered from the instrument which they signed under seal. It would appear from the face of the bond that they intended to be bound. And if they intended to be bound it was in a joint obligation for the full penalty of the bond. The justification on the bond is as follows:

"STATE OF MICHIGAN,
"County of Van Buren—ss.
"Levi De Haven, $1,500; W. H. Goss, $1,000; G. W. Porter, $1,000; H. D. Harvey, $1,500, each for himself being duly sworn deposes and says that he is worth in property liable to execution the sum of.......... dollars over and above all just debts, claims and liabilities.

"LEVI DE HAVEN    (Seal)
"W. H. GOSS    (Seal)
"G. W. PORTER    (Seal)
"H. D. HARVEY    (Seal)

"Subscribed and sworn to before me this 21st day of December, A. D. 1918.

"FRED W. REAMS,
"Notary Public."

We cannot agree with counsel that their liability is limited to the several amounts set opposite their names. The claim that they thus intended to limit their liability is inconsistent with the recital in the body of the bond wherein it is said that they as sureties are held and firmly bound to the people in the penal

sum of $5,000. A fairer interpretation of the use of the figures opposite their names is that these sums represented the individual worth in property of the sureties. This intention to justify to those specified amounts instead of in the sum of $5,000 is apparent from the fact that immediately following these figures in the jurat, the amount that each swears he is worth is left blank. It would have been proper for them to have limited their liability and, if they had so intended, it would have been a simple matter to have so expressed it in the bond. As the bond on its face does not show an intention to limit their liability they must be held to be jointly and severally liable for the full penalty.

Other questions which we do not here deem it necessary to discuss are fully considered in *People, for use of Lapeer County Bank,* v. *O'Connell,* 214 Mich. 410.

In our view of the evidence Mr. Myers and the sureties on his bond are relieved from any liability. Mr. Ashley and his sureties are liable for the payment of the three orders held by A. D. Hoppin. The other holders of orders and certificates must be paid *pro rata* from the amount of the Moon bond. Interest will be allowed from the date when liability accrued.

The decree of the circuit judge will be modified in accordance with this opinion. Defendant A. D. Hoppin will have costs against Charles E. Ashley and his sureties Goss, Porter, Harvey, and DeHaven. Harold Myers and his sureties, Myers and Shultz, will have costs against the Home State Bank of Lawrence, the First National Bank of Paw Paw and the Lee State Bank. The Home State Bank of Lawrence, the First National Bank of Paw Paw, and the Lee State Bank will have costs against Moon and the plaintiff.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.