**McNUTT OIL & REFINING CO., Inc. v.
MIMBRES VALLEY BANK.**

No. 3773.

United States Court of Appeals
Tenth Circuit.

April 23, 1949.

J. D. Weir, of Las Cruces, N. M. (W. C. Whatley and W. B. Darden, both of Las Cruces, N. M., on the brief), for appellant.

J. R. Modrall, of Albuquerque, N. M. (Simms, Modrall, Seymour & Simms and James E. Sperling, all of Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

McNutt Oil & Refining Company[1] brought this action against Mimbres Valley Bank[2] for the alleged conversion of seven checks drawn on the Treasurer of the United States payable to McNutt, aggregating $10,100.35, which were endorsed in the name of McNutt by Forrest T. Davidson, its agent, and deposited and credited to the personal account of Davidson in the Bank. From an adverse judgment, McNutt has appealed.

The facts are these: On or about November 7, 1939, and at all times hereinafter pertinent, McNutt operated a retail and wholesale petroleum products station at Deming, New Mexico. On that date, Kim-

---

[1] Hereinafter called McNutt.

[2] Hereinafter called the Bank.

bley, as agent of McNutt, opened an account with the Bank in the name of McNutt by depositing $35.76. Kimbley was unable to give the Bank definite instructions with respect to the endorsement of checks, deposits thereof, and withdrawals from the account. On that date, the Bank wrote a letter to McNutt at its principal office in El Paso, Texas, requesting instructions with respect to the handling of the account, and specifically requesting instructions with respect to endorsements of the checks in McNutt's name, the depositing thereof, and withdrawals from the account, and enclosed therewith a signature card. On November 8, 1939, McNutt forwarded a letter to the Bank enclosing the signature card with the names C. Blaine McNutt and Cecil McNutt as persons authorized to sign checks and withdrawals from the account and directing the Bank to remit weekly all funds in excess of $500. The letter gave no instructions with respect to the endorsement and deposit of checks payable to McNutt, and no instructions with respect to the endorsement and deposit of checks payable to McNutt were given by it to the Bank until approximately two years after the checks herein involved were deposited.

In 1942, Davidson succeeded Kimbley as McNutt's agent in Deming. McNutt gave Davidson authority to manage its retail and wholesale station, to hire and discharge employees, and when rationing came into effect, gave Davidson authority to handle its rationing account with the Bank and check thereon.

When Davidson made his first deposit in the Bank, as agent of McNutt, the Bank inquired who he was and if his signature was authentic. It also gave him signature cards to send to McNutt to verify the signatures. He sent the cards to McNutt. They were returned and Davidson delivered them to the Bank.

McNutt furnished Davidson with daily report blanks. Davidson filled these blanks out daily and sent them to McNutt.[3] They reflected the sales and receipts of each day's business, the amount paid out by Davidson for necessary expenses, and the balance due McNutt. McNutt instructed Davidson to deposit all funds to its credit in the Bank over and above a petty cash account of $25 to be kept at the station and to send duplicate deposit slips to McNutt's home office in El Paso with his daily report. Those instructions were not communicated to the Bank and it had no knowledge thereof at any time here pertinent.

Between January 15 and April 22, 1944, Davidson received the seven checks referred to above, endorsed and deposited them as stated above, and the Bank credited them to Davidson's personal account.

Davidson did not, in fact, have authority to endorse checks payable to McNutt other than for the purpose of depositing them in the Bank to McNutt's account.

During all times here pertinent, McNutt employed Paul A. Robinson as its internal auditor. Robinson's duties were to visit all the stations of McNutt, including the one at Deming, check the accounts, cash inventories, and other matters at each station at least once monthly and examine at the home office the daily reports sent in from each station, including Davidson's daily reports.

Neither McNutt nor Robinson at any time notified the Bank not to accept checks payable to McNutt on Davidson's endorsement for deposit in Davidson's individual account and for a substantial period of time prior to January 15, 1944, and through April 23, 1944, McNutt accepted checks drawn by Davidson on his individual account for balances due on daily reports and made no objection to the Bank concerning the method followed by Davidson in handling funds of McNutt.

For a substantial period of time prior to January 15, 1944, and during the period the checks here involved were deposited, Robinson knew that Davidson had opened an individual account in the Bank; that Davidson was depositing funds of McNutt in that account and was issuing his personal checks, drawn on his individual account, in payment of the daily balances which he owed McNutt.

[3] The daily reports from December 1, 1943, until the latter part of April, 1944, were introduced in evidence. Those prior to December 1, 1943, could not be found.

From time to time, Davidson also purchased petroleum products from other dealers for the McNutt station, paid therefor with personal checks drawn on his individual account, and attached paid bills showing such purchases and such payments by his personal check to his daily reports to McNutt.

On a number of occasions, Robinson criticized Davidson for the manner in which he was handling funds of McNutt and directed him to stop the practice. Davidson complied with Robinson's direction for short periods but always resumed his former practice and continued to handle the funds of McNutt as indicated above until the latter part of April, 1944, when he left Deming without notice to McNutt.

In a few instances after Davidson had deposited funds of McNutt to the credit of his personal account, he drew a check payable to McNutt and deposited the same to the credit of McNutt in the Bank and, thereupon, transmitted to McNutt along with his daily report a duplicate deposit slip. In several instances, the duplicate deposit slip showed a deposit to McNutt's account in the Bank, and bore a notation in the space provided for the listing of the checks, "Forrest Davidson," together with the amount therefor.

The Bank sent monthly statements to McNutt showing deposits and withdrawals from its account. The practice of remitting by cashier's check when the account exceeded $500 had been discontinued, on the instruction of McNutt, long before the checks here under controversy were deposited; and withdrawals from the McNutt account in the Bank were made thereafter by drafts drawn on the Bank by McNutt.

Many of the daily reports reflected cash sales by McNutt and remittance therefor was by personal check of Davidson, forwarded with the report, indicating clearly that Davidson was depositing McNutt's funds to his personal account and remitting therefor by his personal check.

For a long period of time prior to January 15, 1944, and during the period the checks here involved were deposited, McNutt knew that Davidson was depositing McNutt's funds in his individual account, withdrawing such funds by his personal checks in payment for products purchased from other dealers, and remitting remaining balances due McNutt as reflected in his daily reports, by personal checks of Davidson drawn on his personal account.

The trial court found, substantially, the foregoing facts. Such findings are supported by substantial evidence and are not clearly erroneous. They are binding on this court.[4]

The late Mr. Mechem in his work on Agency, Vol. 1, 2d Ed., at page 509, defines apparent authority and agency by estoppel as follows: " 'Apparent authority is that which, though not actually granted, the principal knowingly permits the agent to exercise, or holds him out as possessing;' while 'Agency, or authority, by estoppel arises in those cases where the principal by his culpable negligence permits his agent to exercise powers not granted to him, even though the principal have no notice or knowledge of the conduct of the agent.' 'Apparent authority is not founded in negligence of the principal, but in the conscious permission of acts beyond the powers granted, whereas the rule of estoppel has its basis in the negligence of the principal in failing properly to supervise and control the affairs of the agent.' "

The test is what powers, persons of ordinary prudence, familiar with business practices, dealing with the agent, without knowledge of any limitation on the agent's authority, might reasonably believe him to have on the basis of the principal's conduct.[5]

---

[4] Payne v. Pray, 10 Cir., 173 F.2d 149.

[5] Douglass v. Mutual Ben. Health & Accident Ass'n, 42 N.M. 190, 76 P.2d 453, 456; Quint v. O'Connell, 89 Conn. 353, 94 A. 288, 290; Brager v. Levy, 122 Md. 554, 90 A. 102, 104; Maryland Casualty Co. v. Moon, 231 Mich. 56, 203 N.W. 885, 887; Baurhenn v. Fidelity & Deposit Co. of Maryland, 114 N.J.L. 99, 176 A. 137, 139; Mossman v. Millenbach Motor Sales, 284 Mich. 562, 280 N.W. 50, 53; Walter v. Baldwin, 126 Pa.Super. 589, 193 A. 146, 148; Marathon Oil Co. v. Hadley, Tex.Civ.App., 107 S.W.2d 883, 887.

314

Absence of the intention to confer any power of the character of that exercised cannot be asserted as a defense.[6] The agent's authority as to those with whom he deals, absent knowledge to the contrary, is what it reasonably appears to be.[7]

Davidson had authority to endorse checks payable to McNutt and deposit them to its account in the Bank. McNutt, over a long period of time prior to January 15, 1944, and during the period the checks here involved were deposited, permitted Davidson to deposit its funds to his personal account in the Bank and to check such funds out in payment for petroleum products purchased for McNutt by Davidson and to remit with his daily reports balances due McNutt by Davidson's personal check. With respect to the checks for the alleged conversion of which McNutt seeks recovery, we hold it was estopped to deny Davidson authority to endorse and deposit such checks in his personal account.

Affirmed.

BRATTON, Circuit Judge, dissenting.

---

[6] Henry Cowell L. & C. Co. v. Santa Cruz County Nat. Bank, 82 Cal.App. 519, 225 P. 881, 882.

[7] St. Louis & S. F. R. Co. v. Hall, 186 Ala. 353, 65 So. 33, 35.