T. H. BREHM CO., INC., *v.* J. R. HILBERT CO., INC.

1. Contracts—Construction—Contemporaneous Papers.
    Exclusion from evidence of worksheet used by defendant in figuring reductions from the original price of his bid and made contemporaneously with his amended proposal and in the presence of all interested parties was error, since it was material and relevant to the issues involved in action for damages for breach of contract in installation of pipe varying from general contract specifications.

---

References for Points in Headnotes
[1, 2]  12 Am Jur, Contracts § 226 *et seq.*

2. Same—Construction—Piping.

The installation of black iron pipe as the cooler water piping in a store building construction job *held*, in strict conformity to the agreement of the parties and not in breach thereof, under a clear preponderance of the evidence.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted April 13, 1961. (Docket No. 79, Calendar No. 48,819.) Decided June 28, 1961.

Case by T. H. Brehm Co., Inc., a Michigan corporation, general heating contractor, against J. R. Hilbert Co., Inc., a Michigan corporation, plumbing subcontractor, for damages arising from breach of contract in installation of pipe varying from general contract specifications. Judgment for plaintiff in Detroit common pleas court reversed and judgment entered for defendant in circuit court. Plaintiff appeals. Affirmed.

*James K. O'Leary,* for plaintiff.

*Maiullo & Maiullo (Joseph A. Maiullo,* of counsel), for defendant.

Smith, J. The case before us involves the determination of the content and meaning of a contract. Specifically, the question is whether the installation of black iron pipe, rather than galvanized pipe, was called for by the contract made between the parties hereto. The specifications in the general contract for the construction of a shopping center required that "all water piping shall be standard weight galvanized steel pipe." It is asserted that the general heating contractor, T. H. Brehm Co., plaintiff and appellant, had authorized a variation from this requirement in its contract with the plumbing contractor, J. R. Hilbert Co., Inc., defendant and appellee, to effect a reduction in price.

In response to a request from Brehm for bids on the proposed plumbing work, Hilbert had originally submitted a bid for $23,703.[1] Brehm regarded this as too high. Accordingly a meeting was arranged to discuss possible adjustments. As a result of this meeting Hilbert submitted an amended proposal containing a lower bid, namely, $21,628, and, subsequently, a purchase order specifying this figure was

---

[1] The bid was made in the form of a letter:

"October 8, 1956

"T. H. Brehm Company, Inc.
"21380 Coolidge Highway,
"Oak Park, Michigan
"Attention: Mr. Thomas Brehm
"Reference: Miracle Mile Stores
                    Oakland County, Michigan

"*Gentlemen:*

"Confirming our conversation of October 5th, we propose to furnish necessary materials and labor to install piping and equipment as detailed below for the sum of:

"J. C. Penney Company .............. $23,703
"Kresge Company ...................... 12,908

                    "Total ................... $36,611

"The following is a divisional breakdown as agreed:
"By T. H. Brehm Company:

"Furnish and set cooling tower
  "    "    " heating and ventilating units
  "    "    " all coils
  "    "    " chillers and pumps
  "          all sheetmetal and breachings
  "          all insulation ·
  "          refrigeration cycle
  "          temperature controls

"By J. R. Hilbert Company:

"Furnish and set boilers
  "    "    " condensate pumps
  "    "    " unit heaters, force flos and radiation
  "          all steam and condensate piping
  "          cooling tower (J. C. Penney) piping
  "          gas and water make-up from adjacent to boiler
                    rooms
  "          [In pencil] gas burners (sub)

"We trust the above completely clarifies the scope of responsibilities for each company and thank you for the opportunity to submit this quotation.

                    "Very truly yours,
                    "J. R. HILBERT COMPANY, INC.
                    "R. N. O'LOUGHLIN

"RNO/ak"

sent by Brehm to Hilbert. Both parties agree that it is the meaning of the purchase order on which this case turns. It reads, in its entirety, as follows:

"For the sum of $21,628 you are to furnish and install the following at the J. C. Penney Store, Michigan Miracle Mile.

"Steam heat as per plans and specifications (Powermaster 100 HP packaged boiler) condensate pump, unit heaters, force flos, radiation, steam and condensate piping, cooling tower piping, gas and water from adjacent to boiler room. Supply necessary labor and material to install tenant's pressing equipment."

Standing alone this order settles nothing as to the controversy before us. Something, obviously, has caused a reduction in price from $23,703 to $21,628 and it would be a reasonable assumption that the terms of the purchase order reflect the changes made. Yet without the past background of the higher bid and the attempted adjustment thereof the terms employed are without significance. Why, for example, is the term "packaged boiler" now employed? Since the issue before us involves piping, the question also arises as to why the distinction is made in the purchase order between "steam and condensate piping" and "cooling tower piping."

We have noted that it was as a result of the conference as to price, above mentioned, that certain adjustments in the proposal were made in order to secure a lower bid. They are summarized in defendant's exhibit 2, set forth in the margin hereof,[2] and

---

[2] "Nov 26 56

"T. H. Brehm

"We shall furnish labor and material necessary to install pressing equipment for the Penney store as part of our price, herewith quoted.

"The pressing equipment shall be furnished by owners and delivered to the site. Equipment shall include pressing machine, buffer, condensation and boiler with blow-off basin, and all steam specialties such as valves, traps, strainer pressure gauge, tubing, et cetera.

are further exemplified in Hilbert's work sheet. A reduction in price of $1,465 from an interim bid or computation was accomplished by a saving with respect to the boiler, in the use of a packaged boiler instead of the nonpackaged boiler called for by the plans and specifications, by the use, in a portion of the installation, of black iron pipe instead of galvanized, and by a reduction in markup. The work sheet showed a $205 reduction under a notation reading "galv to blk condenser piping". That the substitution of the black iron piping was proposed as one of the economy measures there can be no serious question. Reference thereto will be found in the amended proposal itself in the words "Included is 4,000 for cooling water piping J. C. Penney—Blk. iron pipes." The work sheet, as we have noted, reflects this change and the precise saving to be effected by it.

It is equally clear that Brehm, through its agent, sales manager Frank Vatalaro (who negotiated the contract with Hilbert and supervised its execution) accepted the changes thus made.[3] Subsequent to the submission of the amended bid, Hilbert was permitted to go to work immediately on the job, in reliance upon the verbal agreement reached. The purchase order above quoted, when received some

---

"Drain for blow-off basin, and gas for boiler shall be provided by plumber.

"Stack for boiler is necessary (by T. H. Brehm Co.).

| "Kresge | 12,300 [in pencil] |
| | + 160.00 if possible |
| "J. C. Penney | 21,628 |
| | "33,928 |

"Included is 4,000 for cooling water piping
"J. C. Penney—Blk. iron pipes.

"Kresge—Plans & Spec.
"Penney—Powermaster 100 HP Insulation of jacket.
    "also condensate package units.
                    "G. Robertson"

[3] See *Maryland Casualty Co.* v. *Moon*, 231 Mich 56.

2 months later, caused no misgivings to Hilbert since it was consistent with the agreement thus reached. The steam heat ("the wet heat part of the job") was to be "as per plans and specifications," which specifications, as we have seen, included galvanized piping. However, the expression "steam heat" does not, by Brehm's own admission, include the cooling tower. The purchase order then speaks of the packaged boiler, the condensate pump, the pressing equipment, the steam and condensate piping, and (differentiated therefrom, presumably in the light of the agreement reached with respect thereto) the "cooling tower piping." Such piping, black iron rather than galvanized, was installed in due course. No objection to such installation, or, indeed, to any of the other items adjusted in accordance with the amended quotation, was made by Brehm. The latter's agent, Mr. Vatalaro, found no fault with the black iron pipe. When asked if he was satisfied with the black iron pipe, he stated, "If the J. C. Penney Company [lessee of the premises] was satisfied with it, it was perfectly all right with me." As a matter of fact, the "punch" list (a list of work considered not properly completed) sent by Brehm to Hilbert as late as October 28, 1957, after completion of the work in September of that year, makes no reference to the substitution of black iron piping, although it does list the lack of a bleed-off line in the very installation (the cooling tower) in which black iron piping had been installed. We observe in passing that insofar as the J. C. Penney Company's approval or disapproval is concerned, Hilbert was not under contract with Penney, but with Brehm.

We agree with the circuit judge that it was error for the trial court to exclude the work sheet used by Hilbert in figuring his reductions from the original price. It was made contemporaneously with the amended proposal, in the presence of all interested

parties, and was material and relevant to the issues controverted.

The short of it is that Hilbert, as a result of the agreement reached orally at the conference, and later confirmed by the terms of the purchase order, which have definite content only in the light of the circumstances under which they were used, installed black iron piping in the cooling tower. Brehm's contention that such installation was a violation of their contract is without merit. As the circuit court properly concluded, there was no breach of contract, since the agreement of the parties contemplated that Hilbert install black iron pipe as the cooler water piping. Thus, as the circuit court ruled, there is a clear preponderance of evidence, properly admissible, that the installation of black iron pipe was in strict conformity with the agreement of the parties and not in violation thereof.

It is unnecessary to consider additional questions raised. The judgment of the circuit court is affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.