No. 4880

**JOHN F. McDOUGALL, ppa**

v.

**METROPOLITAN TRANSIT AUTHORITY**

(October 26, 1962—

*Present*: Adlow, C. J., Lewiton & Canavan, JJ.

Case tried to Gillen, J.

*Lewiton, J.* This is an action of tort in which the plaintiff, a minor, who brings the action by his father and next friend, seeks to recover for personal injuries which he sustained under the circumstances described below. At the conclusion of the evidence, the defendant submitted requests for rulings which were denied by the trial judge, who thereafter found for the plaintiff. The defendant claims it was aggrieved by the denial of its requested rulings.

*The evidence warranted a finding* of the following facts:

On the evening of March 12, 1960, the plaintiff, (who was then a boy of fifteen, was

a passenger on a bus of the defendant, intending to get off at a bus stop located at 121 Bunker Hill St., Charlestown (hereinafter referred to as the "Bunker Hill Stop"). Two of the plaintiff's companions got off the bus at Hayes Square (the next prior stop). At that time there was a snowbank extending from the right hand curb of Bunker Hill Street, some seven feet into the street for the entire distance between Hayes Square and Monument St., which was the next intersecting street, one-half block beyond Bunker Hill Stop. From its furthermost point of extension into the street, the snowbank went up toward the sidewalk at an angle of about 45°, to a height of between four and five feet. The surface of the snowbank was "uneven, hard, crusty, icy, slippery and dirty as the result of its melting and freezing, over the period of eight or nine days it had been there." There were no openings in the snowbank at the Bunker Hill Stop or at any point between the Hayes Square stop and Monument Street.

When the bus stopped at the Bunker Hill Stop, at about 8:20 p.m., to let the plaintiff and his friend off, the driver opened the door on the right hand side of the bus, about two feet back from the front of the bus. The step from which one would descend from the bus was about 18 inches from the ground. The operator had driven the bus next to the snowbank and within a distance of a foot or less from it. The plaintiff and his companion were forced to step from the bus onto the snowbank,

about half-way up. The area in which they had to step was "slippery, icy, hard and crusty". Because of the position of the bus, it was impossible for them to have stepped from the bus to any place but on a snowbank. They could not step into the street. The plaintiff went up to the top of the snowbank by bending down, touching the snow, getting a firm grasp so that he could not slip, and bracing himself. When he reached the top in this manner, the bus was a few feet away and had not started. The area was well lighted by arc lights. In the direction towards which the bus had been operated, and in front of the plaintiff, was a car wedged into the snowbank with its right wheels next to the curb, some four feet from the plaintiff and about two feet in front of the bus. It was a little more than three feet from the top of the snowbank to the sidewalk, laterally, but the plaintiff testified that he could not have walked straight to the sidewalk. The plaintiff intended to reach the parked car to grab onto it so that he could get down from the snowbank without slipping. He took one or two steps in that direction, going about two feet, when he slipped on the hard and slippery surface of the snowbank, hit the side of the embankment towards the bus with his back, and slid on his back towards the bus, which started up at just about that time. His body slid under the bus in the area between the front and rear wheels, and the rear wheels passed over his body, causing severe injuries to the plaintiff. The next day,

marks of the bus tire were seen on the plaintiff's body.

A bus operator of the defendant testified that on the evening in question, he was operating a bus on this run, and that he was on that route at about the time of this accident; that he had made previous stops at the Bunker Hill Stop during the evening of this accident, and had known of the snow conditions and the dimensions of the snowbank both before and at the time of the accident; that on previous trips, when he had stopped and discharged passengers at the Bunker Hill Stop, he would look for an open space so that a passenger could get off without crawling over the snowbank; that he would stop where there was an opening, and at a distance of three or four feet away from the snowbank; that if there was no opening, he would move away toward the middle of the street, so that anyone getting off would be able to stand on the bare street rather than on the snowbank, and that he would wait until the passengers would either walk behind the bus or in front of it, and then he would proceed; that he certainly would not stop the bus next to the snowbank and let somebody climb up the opening and drive on before they got off the embankment; that he could not state what he did there at 8:20 that night, and did not remember whether he stopped there at that time or not.

The defendant's request No. 1, that there was no evidence of negligence on the part of the defendant or its employees, was

properly denied. There was an obligation on
the defendant as a carrier to stop the bus at a
safe place for the plaintiff to alight. *Wakeley
v. Boston Elevated Ry. Co.,* 217 Mass. 488,
490; *Brown v. Metropolitan Transit Authy.,*
341 Mass. 690, 693; *Langton* v. *Mason,* 345
Mass. 764; *Coyne* v. *Town of Arlington,* 327
Mass. 233, 235; *Roden v. Connecticut Co.,*
113 Conn. 408, 410; *Baltimore Transit Co.
v. Brooks,* 224 Md. 242; *Patton v. Minn. St.
Ry. Co.,* 247 Minn. 368. The defendant's
operator could be found to have been negli-
gent in stopping the bus in a position whereby
the plaintiff, as he left the bus, was forced to
step half-way up a slippery snowbank four
to five feet high. This was not a streetcar. The
course of the defendant's bus was not restricted
by a set of fixed tracks, and there is nothing
in the reported evidence to indicate that the
operator was compelled to stop so close to the
snowbank. In our opinion, reasonable pru-
denc would have dictated that if the operator
did not choose to proceed to the next opening
in the snowbank before stopping, he should
at least have stopped the bus further out in
the street, away from the snowbank, so that
the plaintiff could step onto a flat, safe road
surface. The operator's failure to do this could
be found to be negligence. *Cf. Roden v. Con-
necticut Co.,* supra; *Baltimore Transit Co. v.
Brooks,* supra; *Woodward v. Saginaw City
Lines, Inc.,* 365 Mich. 273, 278; *Welch v.
Triple Cities Traction Corp.,* 38 N.Y.S. 2d 616,
Aff'd. 290 NY 836; *Cleveland-Akron-Canton*

*Bus Co. v. Walker,* 30 Ohio App. 411, 416.

The case at bar is distinguishable from *Langton v. Mason, supra,* where the evidence did not show that the defendant-cab driver, in following the instructions of the plaintiff-passenger "could have proceeded any further along Bowers Street to a safer place." 345 Mass. 764.

Moreover, the trial judge could properly find, as he did in denying the defendant's requested rulings numbered 2 and 4, that the bus operator should have observed the plaintiff's precarious position as he climbed up to the top of the snowbank (alongside the front part of the bus) and then tried to proceed along the top of the bank towards the parked car forward of the bus, where he hoped to find support on his way to the sidewalk, and that the operator was negligent in starting the bus before the plaintiff had reached a point of safety. *Niles v. Boston Elev. Ry. Co.,* 230 Mass. 316, 319; *Pantuso v. Pittsburgh Motor Coach Company,* 360 Pa. 464; *Patton v. Minn. St. Ry. Co.,* 247 Minn. 368; *Cf. Douglas v. Whittaker,* 324 Mass. 398, 401; *Stevens v. Reyn,* 220 Mass. 332; *White v. Connecticut Co.,* 88 Conn. 614, 618. This would be true even if, as the trial judge assumed in dealing with defendant's requested ruling No. 2, and, as we assume, the plaintiff had ceased to be a passenger at the time of his injury.

The defendant sought rulings that after alighting from the bus, the direction in which the plaintiff proceeded was solely a voluntary

action on his part (Request No. 3), and that
after attaining the peak of the snowbank the
plaintiff had the choice of proceeding in any
direction he wished (Requests numbered 5
and 7); that the plaintiff had arrived at a
place of safety before the bus started up again
(Request No. 4) and that he chose a danger-
ous course of walking after attaining a safe
position (Request No. 6). All of these re-
quests were properly denied. The evidence
warranted the findings made by the judge to
the effect that (a) the position in which the
bus was stopped left the plaintiff no choice
of direction, but forced him to climb up the
side of the slippery snowbank; (b) the plain-
tiff had not reached a place of safety when
the bus started; and (c) when the plaintiff
reached the top of the snowbank he was not
in a position of safety but was reaching for
the snow-locked automobile for support when
he slipped. Although the plaintiff testified
that it was a little more than three feet from
the top of the snowbank to the sidewalk,
laterally, and that the only thing between him,
at the top of the snowbank, and the sidewalk
was the rest of the snowbank, he further testi-
fied that he could not have walked straight
to the sidewalk. The judge was free to accept
this testimony. In the absence of any evidence
as to the shape, height, degree of slipperiness,
slope towards the sidewalk, or other features
of that side of the snowbank, or as to the
dangers involved in attempting to cross it
laterally to the sidewalk, the judge could not

be required to rule that the plaintiff was free to choose that course to the sidewalk, and that the accident was chargeable to his choice of a more dangerous route. In this respect as well as the factor of the age of the plaintiff, the case at bar is distinguishable from cases like *Lee v. Boston Elevated Ry. Co.*, 182 Mass. 454.

Report dismissed.

William E. Ryan and Arthur J. Learson, of Boston, for the Defendant.

Vincent J. Cosgrove, of Boston, for the Plaintiff.